1  S. ART HASAN, CA Bar No. 167323
   art.hasan@cph.com
2  BRIAN K. BROOKEY, CA Bar No. 149522
   brian.brookey@cph.com
3  G. WARREN BLEEKER, CA Bar No. 210834
   warren.bleeker@cph.com
4  CHRISTIE, PARKER & HALE, LLP
   350 West Colorado Boulevard, Suite 500
5  Post Office Box 7068
   Pasadena, California 91109-7068
6  Telephone: (626) 795-9900
   Facsimile: (626) 577-8800
7

8  Attorneys for Plaintiff,
   CALCAR, INC. and AMERICAN
   CALCAR, INC.
9

                    UNITED STATES DISTRICT COURT
10
                  NORTHERN  DISTRICT OF CALIFORNIA
11

12  CALCAR, INC., a California          Case No. 3:08-mc-80083 MHP
    corporation; and AMERICAN
13  CALCAR, INC., a Delaware corporation,  Underlying Civil Action Pending in
                                         U.S. District Court for the Central
14            Plaintiffs,               District of California (Civil Action
                                         Case No.  SACV07-00723)
15       vs.
                                         **REPLY MEMORANDUM IN
16  THE CALIFORNIA CARS                  SUPPORT OF PLAINTIFFS'
    INITIATIVE, INC., an unknown         MOTION TO COMPEL RULE
17  business entity; and FELIX KRAMER,   30(B)(6) DEPOSITION
    an individual,                       TESTIMONY FROM THIRD
18                                       PARTY GOOGLE, INC.**
              Defendants.
19                                       **DATE:    TBD
                                         TIME:     2:00 p.m.
20                                       CTRM:     15**

21

22

23

24

25

26

27

28
   Reply Memorandum - Case No.3:08-mc-80083 MHP

1

## TABLE OF CONTENTS

2

3
                                                                                    PAGE(S)

4    I.      INTRODUCTION ................................................................................ 1

5    II.     GOOGLE HAS WAIVED *ALL* OBJECTIONS. ............................................ 3

6    III.    THE DEPOSITION SUBPOENA SEEKS INFORMATION
             REASONABLY CALCULATED TO LEAD TO THE
7            DISCOVERY OF ADMISSIBLE EVIDENCE. ...................................... 6

8    IV.     THE FIVE DEPOSITION TOPICS ARE NOT OVERLY
             BURDENSOME ............................................................................. 10
9
     V.      THE DEPOSITION SUBPOENA IS NOT "DUPLICATIVE" ................... 12
10
     VI.     CALCAR COMPLIED WITH LOCAL CIVIL RULE 37-2. .................... 13
11
     VII.    CONCLUSION ............................................................................... 14
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

PAGE(S)

3

*AMF Inc. v. Sleekcraft Boats,*
    599 F.2d 341 (9th Cir. 1979) .................................................2, 7, 8, 9

4

*Allendar v. Raytheon Aircraft Co.,*
    220 F.R.D. 661 (D. Kan. 2004) .................................................5

5

6

*Blankenship v. Hearst Corp.,*
    519 F.2d 418 (9th Cir. 1975) .................................................11, 12

7

*Cacique, Inc. v. Robert Reiser & Co, Inc.,*
    169 F.3d 619 (9th. Cir. 1999) .................................................8

8

9

*Grateful Dead Products v. Sagan,*
    2007 U.S. Dist. LEXIS 56810 (N.D. Cal. 2007) .................................................4

10

*Kephart v. National Union Fire Insurance Co.,*
    2007 U.S. Dist. LEXIS 51705 (D. Mont. 2007) .................................................4

11

12

*National Independent Theatre Exhibitors, Inc. v. Buena Vista Distributing Co.,*
    748 F.2d 602 (11th Cir. 1984) .................................................5

13

14

*Paige v. Consumer Programs, Inc.,*
    2008 U.S. Dist. LEXIS 13106 (C.D. Cal. 2008) .................................................4

15

*Pioche Mines Consolidated, Inc. v. Dolman,*
    333 F.2d 257 (9th Cir. 1964) .................................................4

16

17

*Thane International, Inc. v. Trek Bicycle Corporation,*
    305 F.3d 894 (9th Cir. 2002) .................................................8

18

*Union Bank of California 401(k) Plan v. Hansen (In re Coan),*
    2007 U.S. Dist. LEXIS 6288 .................................................3

19

20

### STATUTES

21

Fed. R. Civ. P. 26         .................................................10, 13

22

Fed. R. Civ. P. 26(b)(1).................................................6

23

Fed. R. Civ. P. 26(b)(2).................................................13

24

Fed. R. Civ. P. 26(c)         .................................................3, 4

25

Fed. R. Civ. P. 30(b)(6).................................................6, 9, 10

26

Fed. R. Civ. P. 37         .................................................5

27

Fed. R. Civ. P. 37(d)         .................................................4

28

CHRISTIE, PARKER & HALE, LLP

1

Fed. R. Civ. P. 37(d)(2)................................................................4

Fed. R. Civ. P. 37-2    ...........................................................13, 14

Fed. R. Civ. P. 45 ................................................................10, 13

Fed. R. Civ. P. 45(c)(3).............................................................3

2

3

4

5

6

**MISCELLANEOUS**

Moore's Federal Practice - Civil § 45.30 (2006)....................................3

Rutter Guide, Fed. Civ. Proc. Before Trial, §11:1166..............................4

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CHRISTIE, PARKER & HALE, LLP

## I.    **INTRODUCTION**

Google's opposition papers demonstrate a fundamental lack of understanding of trademark law, and of the Federal Rules of Civil Procedure.

Google chose not to seek a protective order prior to the deposition date, and is left without *any* basis to oppose Plaintiffs' motion to compel. Google took no action for six weeks after being served with a deposition subpoena. From March 18, 2008, when Google was first served with a deposition subpoena, to now, Google has thumbed its nose at its discovery obligations. Google first willfully refused to comply with the subpoena, taking the position that it is somehow above the law and won't appear for depositions. Google next delayed the meet and confer process for weeks, and waited until more than *six weeks after* service of the subpoena (and almost *four weeks after* the deposition date) to even bother to seek a protective order. Even then, Google only did this in response to a motion to compel, and in an apparent attempt to delay a resolution of the parties' dispute until after the discovery cut-off.    Incredibly, Google now asserts it filed its motion as "early as practicable." Google's position is simply not credible. Google has cited to no authority which holds that a motion for a protective order filed one day, let alone almost four weeks *after,* the deposition date is timely.

Even if Google had timely moved, Plaintiffs Calcar, Inc. and American Calcar, Inc. (collectively "Calcar")[1] are still entitled to conduct limited discovery regarding Google's knowledge about its communications with Defendants TCCI and Kramer, and any agreements between Google and these parties, including the $200,000 grant. These communications and agreements are likely to lead to the discovery of admissible information regarding claims and defenses in the

---

[1]  Google states that Plaintiffs' motion to compel "treats 'Calcar, Inc.' and 'American Calcar, Inc.' as the same entity." This is false. Calcar, Inc. and American Calcar, Inc. are separate corporate entities, but for ease of reference are collectively referred to as "Calcar" by Plaintiffs. By collectively referring to Plaintiffs as "Calcar," Plaintiffs do not "treat" Plaintiffs as "the same entity."

1    underlying action, including, but not limited to, Defendants TCCI's and Kramer's
2    use of the infringing mark to make a profit, marketing channels used or planned
3    to be used by Defendants TCCI and Kramer, actual confusion, and Defendants'
4    representations regarding their defense that they are a non-profit, to name a few.

5         Calcar's five narrowly-drafted deposition topics clearly encompass these
6    relevant issues.    Calcar seeks deposition testimony relating to agreements,
7    contracts and communications between Google and Defendants TCCI and
8    Kramer and the Google grant to TCCI.  The documents produced by Google
9    demonstrate that Google had numerous communications with Defendants and that
10   Defendants applied for at least one grant, which they received.  Evidence of
11   communications and agreements between Google and Defendants is reasonably
12   likely to contain information regarding how Defendants would use the grant
13   money, which is directly tied to Defendants' use of the infringing mark and
14   marketing channels.  Deposition testimony regarding these communications and
15   agreements will also likely contain information regarding Defendants' purported
16   status as a non-profit, and whether Google, or any customers expressed confusion
17   between Calcar's mark and Defendants' infringing mark (or for that matter,
18   discussed Calcar's mark at all).

19        Google takes the position that Calcar's deposition topics do not cover
20   relevant topics because Calcar did not list, for example, each *Sleekcraft* factor as a
21   deposition topic.   The five topics, which seek testimony on communications,
22   agreements, and contracts between Google and Defendants, obviously encompass
23   the *Sleekcraft* factors and other relevant claims and defenses.   Calcar has
24   described with reasonable particularity the *subject matters* for deposition.  Calcar
25   is not required to list every deposition question in its subpoena, as Google seems
26   to suggest.

27

28

CHRISTIE, PARKER & HALE, LLP

1        In addition, Google takes the inconsistent position that, on one hand,

2    Google has no responsive information to discuss at a deposition, but on the other

3    hand, it is "overly burdensome" to require Google to prepare the deposition.   The

4    deposition subpoena is not burdensome on Google.  There are only five topics.  If

5    Google is correct and it does not have any other relationship with TCCI or

6    Kramer besides the grant, the deposition should be fairly brief.   It would have

7    been far less burdensome for Google to have prepared a witness on the limited

8    topics and complied with the subpoena rather than failing to appear, insisting on

9    multiple meet and confer efforts in which it ultimately refused to appear, oppose

10   Calcar's motion, and file its own untimely, duplicative motion. More importantly,

11   Google is not ultimately responsible for any costs associated with complying with

12   the subpoena.   Google does not dispute that, pursuant to the grant agreement,

13   TCCI must indemnify Google for all Google's costs related to complying with the

14   subpoena, including attorneys' fees.

15       Finally, Calcar's discovery requests are not duplicative.  Only Google has

16   personal knowledge of its dealings with TCCI and Kramer.  No one else can

17   provide such testimony.  Moreover, Google has now produced documents that

18   had been requested of, but  not produced by, Defendants.

19       Calcar, therefore, respectfully requests this Court to order Google to

20   comply with the deposition subpoena.

21   ## II.    GOOGLE HAS WAIVED *ALL* OBJECTIONS.

22       "[A] deposition subpoena may only be challenged by moving to quash or

23   modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or

24   by moving for a protective order pursuant to Rule 26(c)."   *Union Bank of*

25   *California 401(k) Plan v. Hansen (In re Coan)*, 2007 U.S. Dist. LEXIS 6288, at

26   *5-*7 (citing to 9-45 Moore's Federal Practice - Civil § 45.30 (2006)).  Serving

27   written objections alone does nothing to preserve any objections.  *Union Bank*,

28   2007 U.S. Dist. LEXIS 6288, at *5-*7 n.3.

Reply Memorandum - Case No.3:08-mc-80083 MHP

CHRISTIE, PARKER & HALE, LLP

3

1    A motion for protective order must be filed *prior* to the deposition date.

2    "[I]t is for the court, not the deponent or his counsel, to relieve him of the duty to

3    appear." *Pioche Mines Consolidated, Inc. v. Dolman*, 333 F.2d 257, 269 (9th Cir.

4    1964); *see also* Rutter Guide, Fed. Civ. Proc. Before Trial, §11:1166 ("A motion

5    for a protective order must be filed "*before the date set* for the . . . deposition.")

6    (emphasis in original).  Under Rule 37(d), failure to appear for deposition "is not

7    excused on the ground that the discovery sought was objectionable, unless the

8    party failing to act has a *pending* motion for a protective order under Rule 26(c)."

9    Fed. R. Civ. P. 37(d)(2) (emphasis added); *Paige v. Consumer Programs, Inc.*,

10   2008 U.S. Dist. LEXIS 13106, *7-*8 (C.D. Cal. 2008).  Thus, failure to appear at

11   a properly noticed deposition is not substantially justified if the motion for a

12   protective order is not filed "before the date of the deposition." *Paige*, 2008 U.S.

13   Dist. LEXIS 13106, *16 (C.D. Cal. 2008).  District courts have denied motions

14   for protective orders as untimely even when filed before the deposition date, but

15   where the hearing date would not occur until after the deposition.  *Grateful Dead*

16   *Prods. v. Sagan*, 2007 U.S. Dist. LEXIS 56810, *4-*5 (N.D. Cal. 2007) (denying

17   motion for protective order, in part, as untimely where motion would not be heard

18   prior to the deposition date); *Kephart v. Nat'l Union Fire Ins. Co.*, 2007 U.S. Dist.

19   LEXIS 51705, *3 (D. Mont. 2007) (denying motion for protective order as

20   untimely when filed 12 days prior to deposition date where moving party did not

21   seek expedited hearing date prior to deposition date).

22       Here, Google waited over six weeks after service of process and almost

23   four weeks after the deposition date to file any motion.  Calcar is aware of no case

24   law, and Google certainly offers none, holding that a motion for a protective order

25   is timely filed over *six weeks* after service of process and almost a month after the

26   deposition date has passed.  Instead, Google cites Section 11:1162 of the Rutter

27   Group Federal Civil Procedure Before Trial for the proposition that a protective

28   order must be filed as early as practicable.  Google fails to provide the full

proposition stated by Section 11:1162, which states: "A motion for protective order ordinarily should be noticed at the earliest possible time and ***certainly before*** the discovery procedure is set to occur." (emphasis added). In the cited case, *National Indep. Theatre Exhibitors, Inc. v. Buena Vista Distrib. Co.*, 748 F.2d 602, 609 (11th Cir. 1984) (also cited by Google), the third party deponent filed a motion for a protective order ***before*** the deposition, not weeks after like Google has done.

The only other authority cited by Google, *Allendar v. Raytheon Aircraft Co.*, 220 F.R.D. 661 (D. Kan. 2004), does not support Google's position. In *Allendar,* the district court denied a motion to quash regarding a subpoena *duces tecum* because the motion was filed *after* the date of the document production, and thus "there is nothing to 'quash.'" *Id*. at 665. The district court also issued a "protective" (*i.e.*, confidentiality) order to apply to medical records, where both parties stipulated that the records were to be limited to that case and must be returned or destroyed at the conclusion of the case. *Id.* Nothing in this decision supports Google's claim that a protective order challenging a deposition subpoena is timely a month after the deposition was to occur.

If Google wanted to file a motion for protective order, it was incumbent on it to file its motion before April 7, 2008. Google chose to ignore the subpoena, and in so doing waived the right to seek a motion for protective order. Under Rule 37 of the Federal Rules of Civil Procedure, Google's refusal to appear for deposition was not justified, and it should be compelled to attend its deposition, prepared to offer meaningful testimony, before May 19, 2008.

CHRISTIE, PARKER & HALE, LLP

III.   **THE    DEPOSITION    SUBPOENA    SEEKS    INFORMATION REASONABLY CALCULATED TO LEAD TO THE DISCOVERY OF ADMISSIBLE EVIDENCE.**

Calcar is entitled to discover nonprivileged information relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). This includes information that a party may use to support its denial or rebuttal of any claim or defense of another party. *Id*.

Calcar identified five straightforward deposition topics in its Rule 30(b)(6) subpoena:   (1) communications between Google and Defendant Kramer; (2) communications between Google and Defendant TCCI; (3) any agreements or contracts between Google and Defendant TCCI; (4) any agreements or contracts between Google and Defendant Kramer and Google; and (5) the Google.org grant to TCCI.

Google concedes its relationship with TCCI and Kramer. The documents produced by Google indicate that Google had numerous communications with Defendants and that Defendants applied for at least one grant, which it received. Calcar is entitled to conduct deposition inquiry into the substance of these communications and any phone conversations or in-person meetings, and the substance of the grant agreement and any other agreements, formal or informal, between Google and Defendants. TCCI, which refers to itself as "Calcars," likely made numerous representations relating to its use of the infringing Calcars mark, including how it proposed to use the Google grant money, and whether it intended to expand its use of the Calcars mark (which incorporates 100% of Calcar's own federally registered trademark). Calcar also has the right to inquire whether Google and TCCI/Kramer have any agreements or understandings regarding website hits for TCCI's infringing website, www.calcars.org, which relate to use of the mark. These topics are directly relevant to the first and eighth

CHRISTIE, PARKER & HALE, LLP

*Sleekcraft* factors.[2]    In addition, Calcar is entitled to learn if during any communications, the issue of actual confusion (the fourth *Sleekcraft* factor) was raised.  These communications and agreements are also likely to reveal evidence regarding how TCCI and Kramer market their products, which is relevant to marketing channels used (the fifth *Sleekcraft* factor).  Any discussions between Google and Defendants relating to Calcar's preexisting trademark rights, and this litigation, also are discoverable, going to Defendants' intent and willfulness in infringing Calcar's mark.

TCCI and Kramer have taken the position in the underlying litigation, that because TCCI is purportedly a "non-profit," TCCI does not receive any "profits." This issue is currently pending in a discovery dispute pending in the underlying matter.  (Suppl. Bleeker Dec., ¶ 2.).  Any communications or representations by TCCI and Kramer to Google regarding TCCI's status as a non-profit is therefore relevant to a claim or defense in the underlying action.[3]

----

[2] In *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-349 (9th Cir. 1979), the Ninth Circuit provided the following, "non-exhaustive" list of factors that are relevant in "determining whether confusion between related goods is likely": 1. strength of the mark; 2. proximity or relatedness of the goods; 3. similarity of the marks; 4. evidence of actual confusion; 5. marketing channels used; 6. type of goods and the degree of care likely to be exercised by the purchaser; 7. defendant's intent in selecting the mark; and 8. likelihood of expansion of the product lines.

[3] Google's in-house counsel, Mr. Barea, falsely states in his declaration that during the meet and confer process, when he asked counsel for Calcar "what information he thought Google possessed that would be in any way relevant to Calcar's trademark infringement action, Mr. Bleeker was unable to identify anything specific." Mr. Barea's statements are not true.  During the extended meet and confer process, Mr. Bleeker identified numerous relevant topics including the five listed deposition topics, TCCI's use of the infringing mark, and whether Google and TCCI had any other agreements, among others.  (Supp. Bleeker Decl., ¶ 3.).

1    In its opposition papers, Google demonstrates a fundamental
2    misunderstanding (or intentional misstatement) of trademark law. Google asserts
3    that the "key issue" in a trademark infringement matter is "consumer confusion."
4    In reality, the key issue is "*likelihood* of confusion" which is measured by eight
5    separate factors. Actual customer confusion, which is one of the eight factors, is
6    not the only relevant issue.[4] In most infringement actions, evidence of actual
7    consumer confusion is not available. The Ninth Circuit has held that *each* of the
8    eight *Sleekcraft* factors should be considered in a trademark infringement action.
9    Not all of the *Sleekcraft* factors have equal weight. *See Thane International, Inc.*
10   *v. Trek Bicycle Corporation*, 305 F.3d 894, 901 (9th Cir. 2002). And finding
11   confusion involves more than just counting how many *Sleekcraft* factors favor
12   each party: a court should instead use those factors for guidance as part of an
13   overall analysis of whether the alleged trademark infringement is likely to
14   confuse. *Id.* ("[t]he list of factors is not a scorecard — whether a party 'wins' a
15   majority of the factors is not the point").

16   Google also argues that its knowledge is not relevant to any issue in the
17   underlying trademark action, citing to the *Cacique* decision of the Ninth Circuit.
18   *See Cacique, Inc. v. Robert Reiser & Co, Inc.*, 169 F.3d 619 (9th. Cir. 1999).
19   Google's reliance on *Cacique* is misplaced. In *Cacique*, the Ninth Circuit held
20   that a plaintiff in a trade secret case was not entitled to a reasonable royalty.
21   Therefore, the Court determined that discovery seeking sales information from a
22   third party, though relevant to a reasonable royalty, should not be produced where
23   the plaintiff is not entitled to a reasonable royalty as a matter of law. *Id.* at 623-
24   25. That holding has no application here. Calcar's infringement claims are

---

[4] Google falsely states that it is Calcar's position that the "key issue" is "consumer confusion." Calcar argues in its moving papers, however, "The key issue in any trademark infringement action is 'the likelihood of confusion, *i.e.*, whether the similarity of the marks is likely to confuse customers about the source of products.'" (Moving Papers at 6:19-22.)

1   pending, and the information sought from Google is related to those claims and

2   TCCI's and Kramer's contentions and defenses.

3        Google also argues that the five designated topics do not mention, by name,

4   the *Sleekcraft* factors, and therefore the deposition cannot encompass these

5   factors. Google's position ignores all common sense. The five topics, which seek

6   testimony on communications, agreements, and contracts between Google and

7   Defendants, obviously encompass the *Sleekcraft* factors and other relevant claims

8   and defenses. Calcar has described with reasonable particularity (as is required

9   by Rule 30(b)(6)), the subject *matters* for deposition. Calcar is not required to list

10   every deposition question in its subpoena.[5] Based on the plain language of the

11   five topics, Calcar is certainly entitled to inquire about any agreements or

12   communications that touch upon TCCI's use of the infringing mark, any

13   intentions to expand its product line, any actual customer confusion, TCCI's

14   purported "non-profit" status, and TCCI's placement of the infringing mark in

15   Google's search engine, to name a few.

16        Google also argues that Calcar has made no "showing" that Google has

17   such knowledge of the listed topics. Of course, there is no requirement that

18   Calcar must make a showing of Google's actual knowledge *prior* to taking the

19   deposition. Google, however, admits it had communications with TCCI and

20   Kramer and even produced certain e-mail traffic evidencing these

21   communications (*See* Opposition at 3:21-22 (admitting producing "a handful of

22   assorted emails"). Google also admitted at least one agreement, and has produced

23   the grant agreement between Google and TCCI. (*See* Opposition at 2:22-23 (". .

24   .Google.org. provided a philanthropic grant to TCCI in 2007.")) Google,

25

26   [5] If Calcar had listed every deposition question or "subcategory" of the listed

27   deposition topics, Google no doubt would complain that such an extensive list would impose an undue "burden" on it that is even great than the burden that

28   Google falsely claims the existing subpoena imposes.

1    therefore concedes it has communicated with TCCI/Kramer and entered at least

2    one agreement with TCCI/Kramer, all of which are very closely linked to

3    Defendants' infringing use of Calcar's mark.  It is clear then that Google does

4    have knowledge of the listed topics.

5         Next, Google attempts to explain away any other involvement with TCCI

6    besides the grant.  Calcar, however, is entitled under Rules 26 and 45 to depose

7    Google, under oath, to learn of the extent of Google's involvement with TCCI.

8    Google baldly asserts, for example, that "Google has already produced the

9    documents related to the grant."  Calcar, however, has the right to determine if the

10   documents produced are, in fact, the only responsive documents, to determine if

11   Google performed a reasonable search for these documents related to the grant, to

12   authenticate the documents, and to find out if there are additional documents that

13   should have been produced (either by Google or by TCCI/Kramer).  Calcar

14   cannot make these determinations from simply reviewing the documents.

15        Google also baldly asserts: "Google has no other relationship with TCCI."

16   Again, Calcar has the right to depose Google to determine what other agreements

17   or understandings might exist between Google and TCCI/Kramer.  Further,

18   Google states that "TCCI does not buy advertising from Google," "Google is not

19   a customer of TCCI," and that TCCI does not "participate in any of Google's

20   advertising programs."  Even if this is the case, Calcar has the right to obtain this

21   testimony by way of deposition, and not by way of an opposition to a motion to

22   compel.

23   IV.   **THE   FIVE   DEPOSITION   TOPICS   ARE   NOT   OVERLY**

24        **BURDENSOME**

25        Google's "burdensome" argument has no merit, and is internally

26   inconsistent. For example, Google argues *both* that it has "little to no knowledge"

27   of the designated subject matters, and that "the burden of preparation for a

28   30(b)(6) deposition is substantial...." (Opposition, at 11:8 and 12:18.)  Google

Reply Memorandum - Case No.3:08-mc-80083 MHP

CHRISTIE, PARKER & HALE, LLP

1    does not explain how the burden of preparing for a deposition on topics as to

2    which it supposedly has "little to no knowledge" could possibly be "substantial."

3    If Google's knowledge truly is limited, the preparation for the deposition and the

4    deposition itself could both be completed in a few hours.  The only way the time

5    required to prepare for and attending the deposition could be "substantial" is if

6    Google in fact does have a great deal of relevant knowledge.  Whether Google is

7    telling the truth about its limited knowledge, or whether it is telling the truth

8    about the "substantial" amount of work required to prepare for and attend a

9    deposition, the deposition is justified.  And Google has offered no specific facts --

10   not even a time estimate as to the amount of preparation that would be required --

11   supporting the claim that the subpoena imposes an undue burden.  "A strong

12   showing is required before a party will be denied entirely the right to take a

13   deposition."  *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975).

14   Google has not even attempted to make such a showing.

15        Google's conclusory "burden" argument is further undercut by Google's

16   scorched-earth, if untimely, motion practice.  As explained above, after initially

17   ignoring the deposition subpoena, Google then took every step possible to

18   prolong the dispute and escalate the costs required to resolve it.  Google initially

19   prolonged the meet and confer process, refusing to make a final determination of

20   whether it would produce a witness until after it produced the documents.  After

21   all the meeting and conferring, Google finally confirmed that under no

22   circumstances would it make any corporate representative available for

23   deposition.  This required Calcar to open a miscellaneous action and move to

24   compel.  Google's outside counsel then engaged in a series of pointless meet and

25   confer efforts.  Google then refused to stipulate to Calcar's motion for an order

26   shortening time in which to have Calcar's motion to compel heard unless Calcar

27   agreed that Google could file a motion for protective order -- filed a month late --

28   and then oppose it within just one Court day.  Google ultimately filed its

Reply Memorandum - Case No.3:08-mc-80083 MHP

CHRISTIE, PARKER & HALE, LLP

untimely, duplicative, "make-work" protective order motion. The following day, in response to an e-mail from Calcar's counsel summarizing a recent conversation, Google's counsel Rachel Herrick sent a competing "confirming" letter. This three-page, single-spaced letter was e-mailed at *9:15 p.m. on a Saturday night*, contained numerous false statements, and again, appeared to be written solely for the purpose of creating a false record and generating attorneys' fees. (Suppl. Bleeker Dec., ¶ 4.) It is almost certain that the time Google spent not just writing this letter, but inventing many of the "facts" recited in the missive, exceeds the amount of time Google would have spent in deposition if it had just shown up.

More importantly, as Calcar noticed in its moving papers (and Google does not dispute), Google is not ultimately responsible for any costs associated with complying with the subpoena. Instead, under Google's agreement with Defendants, TCCI must indemnify Google for all Google's costs related to complying with the subpoena, including attorneys' fees. Therefore, Google will incur no unreimbursed expense involved in preparing for and attending its deposition, just as it should have one month ago.[6]

## V.    THE DEPOSITION SUBPOENA IS NOT "DUPLICATIVE"

Calcar's discovery requests are not duplicative. Only Google has personal knowledge of its dealings with TCCI and Kramer. No one else can provide such testimony. Google, in fact, has already produced highly relevant documents that

---

[6] Google also raises a trade secret issue in its opposition brief (*See* footnote 4). It is highly unlikely that any communications or agreements between TCCI and Google involve Google's trade secrets, which Google self-aggrandizingly describes as among the most valuable in the world. However, a protective order has been entered in the underlying action. (Suppl. Bleeker Dec., ¶ 5; Exh. A.) Counsel for Calcar provided the protective order to Google on April 4, 2008, and Google has utilized that protective order, designating certain of its documents as "confidential." (*Id.*) The protective order has a specific "attorneys' eyes only" designation that would clearly protect any sensitive trade secret information.

had not been produced by the Defendants in the matter. For example, Google produced a "CalCars Due Diligence Report" that had never been produced by TCCI or Kramer. (Suppl. Bleeker Decl., ¶ 6; Exh. B.) This report is further evidence of TCCI's use of the infringing mark. It identifies "key funders" of TCCI. It identifies marketing channels. It also includes an IRS document relevant to TCCI's purported non-profit status. Calcar has the right to depose Google regarding this newly discovered document, as well as the other documents produced by Google.

Also, Calcar has a right under Rules 26 and 45 to obtain information regarding Google's knowledge of meetings and events where TCCI and Kramer were present, including those at which Calcar, and/or Defendants' infringing use of the Calcar's mark, were discussed. This deposition testimony goes beyond mere corroboration, even though corroboration, by itself, is a proper purpose of third party discovery. Kramer and TCCI's memory or knowledge may be incomplete or inaccurate in certain respects. Calcar has the right to learn the entire story, and to keep TCCI and Kramer honest, by examining third parties to learn those third parties' knowledge or understanding regarding communications and agreements, to fill-in missing information and key facts.

## VI.    CALCAR COMPLIED WITH LOCAL CIVIL RULE 37-2.

Local Civil Rule 37-2 applies to motions to compel "*further* responses to discovery requests" (emphasis added). It requires the moving party to explain its contention that it is entitled to the requested discovery and to show how the proportionality and other requirements of Rule 26(b)(2) are satisfied.

At the outset, this rule would seem to apply only to written discovery requests such as interrogatories or requests for production. A deposition subpoena is not generally considered a discovery request. Moreover, Local Civil Rule 37-2 relates to motions to compel *further* responses. Here, Google simply refused to show for deposition. Calcar has not yet deposed Google. Only where

Reply Memorandum - Case No.3:08-mc-80083 MHP

13

CHRISTIE, PARKER & HALE, LLP

1    the deposition had taken place, Google provided a incomplete answer, and Calcar

2    moved for a further response, would Local Civil Rule 37-2 possibly apply.

3        Calcar, nonetheless, has complied with Local Civil Rule 37-2.    Calcar

4    provides the basis for its contention that it is entitled to the requested discovery.

5    (*See* Moving Papers at 6-11.)  Calcar also explained in its Moving Papers how the

6    burden to comply was minimal (*See* Moving Papers at 9) and information it is

7    seeking is not duplicative (Moving Papers at 6-8).  Thus, even if Local Civil Rule

8    37-2 does apply to a motion to compel a third party to comply with a deposition

9    subpoena, Calcar complied.

10   **VII.   CONCLUSION**

11       For all the reasons set forth in the moving papers and this reply brief,

12   Google should be ordered to comply with the deposition subpoena, and to appear

13   for deposition by no later than May 19, 2008.  Calcar is willing to work with

14   Google regarding the specific date, start time, and location for the deposition.

15   Calcar is not even seeking sanctions against Google for its per se "unjustified"

16   refusal to attend its deposition.  But Google is not, in fact, above the law, and

17   should be compelled to appear for the deposition that it was required to attend one

18   month ago.

19

20   DATED:  May 6, 2008                    Respectfully submitted,

21                                          CHRISTIE, PARKER & HALE, LLP

22

23                                          By_____/s/___G. Warren Bleeker

24                                          Attorneys for Plaintiffs,

25                                          CALCAR, INC. and AMERICAN
                                            CALCAR, INC.

26

27   SCL PAS793159.1-*-05/6/08 12:38 PM

28

1

**CERTIFICATE OF SERVICE**

2

3        I certify that on May 6, 2008, I electronically filed the document described

4  as **REPLY MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION**

5  **TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY FROM THIRD**

6  **PARTY GOOGLE, INC.**  with the Clerk of the Court using the ECF system

7  which will send notification of such filing to the parties.  I further certify that I

8  have mailed a true copy of the above document via U.S. Mail to the non-ECF

9  participants addressed as follows:

10                    Michael Thomas Zeller
                   Quinn Emanuel Urquhart Oliver
11                          & Hedges LLP
                865 South Figueroa Street, 10th Floor
12                      Los Angeles, CA  90017

13

14

15

16                    /s/
                                    Susan Lovelace
17

18

19

20

21

22

23

24

25

26

27

28

S. ART HASAN, CA Bar No. 167323
art.hasan@cph.com
BRIAN K. BROOKEY, CA Bar No. 149522
brian.brookey@cph.com
G. WARREN BLEEKER, CA Bar No. 210834
warren.bleeker@cph.com
CHRISTIE, PARKER & HALE, LLP
350 West Colorado Boulevard, Suite 500
Post Office Box 7068
Pasadena, California 91109-7068
Telephone: (626) 795-9900
Facsimile: (626) 577-8800

Attorneys for Plaintiff,
CALCAR, INC. and AMERICAN
CALCAR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALCAR, INC., a California corporation; and AMERICAN CALCAR, INC., a Delaware corporation, | Case No. 3:08-mc-80083 MHP |
| Plaintiffs, | Underlying Civil Action Pending in U.S. District Court for the Central District of California (Civil Action Case No. SACV07-00723) |
| vs. | |
| THE CALIFORNIA CARS INITIATIVE, INC., an unknown business entity; and FELIX KRAMER, an individual, | **SUPPLEMENTAL DECLARATION OF G. WARREN BLEEKER IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY FROM THIRD PARTY GOOGLE, INC.** |
| Defendants. | **DATE:   TBD**<br>**TIME:   2:00 p.m.**<br>**CTRM:  15** |

Suppl. Decl. of G. Warren Bleeker
Case No. 3:08-mc-80083 MHP

-1-

CHRISTIE,
PARKER & HALE,

I, G. Warren Bleeker, declare and state as follows:

1.    I am an associate with the law firm Christie, Parker & Hale, LLP, counsel for Plaintiffs in this Miscellaneous Action, and am admitted to practice before the United States District Courts for the Central and Northern Districts of California.  I have personal knowledge of the contents of this declaration and, if called as a witness, could and would competently testify thereto.

2.    Defendants TCCI and Kramer have taken the position in the underlying litigation pending in the Central District of California, that because TCCI is purportedly a "non-profit," TCCI does not receive any "profits."  This issue is currently pending in a discovery dispute pending in the underlying matter.

3.    During the extended meet and confer process with Google in-house counsel Mr. Barea, I identified numerous relevant topics including the five listed deposition topics, TCCI's use of the infringing mark, and whether Google and TCCI had any other agreements, among others.

4.    On May 3, 2008, in response to an e-mail from Calcar's counsel summarizing a recent conversation, Google's counsel Rachel Herrick sent a competing "confirming" letter.  This three-page, single-spaced letter was e-mailed at 9:15 p.m. on a Saturday night, contained numerous false statements, and appeared to be written solely for the purpose of creating a false record and generating attorneys' fees.

5.    A protective order has been entered in the underlying action.  I provided a copy of the protective order to Google on April 4, 2008.  Attached as Exhibit A is a true copy of my correspondence to Google attaching the protective order.  Google has utilized that protective order, designating certain emails as confidential.

1

2    6.    Google has produced a "CalCars Due Diligence Report" that had

3 never been produced by TCCI or Kramer.  A true copy is attached as Exhibit B.

4 Google did not designate this document as  confidential.

5

6    I declare under penalty of perjury under the laws of the United States of

7 America that the foregoing is true and correct, and that this declaration is

8 executed on May 6, 2008, in Pasadena, California.

9

10

11                                   G. Warren Bleeker

12

13

14

15   SCL PAS793207.1-*-05/6/08 12:07 PM

16

17

18

19

20

21

22

23

24

25

26

27

28   Suppl. Decl. of G. Warren Bleeker
     Case No. 3:08-mc-80083 MHP

-3-

CHRISTIE,
PARKER & HALE,

Exhibit A



CHRISTIE | PARKER | HALE LLP
Leaders in Intellectual Property Law & Complex Litigation

PASADENA OFFICE
350 W. Colorado Blvd., Suite 500
Pasadena, CA 91105
Post Office Box 7068
Pasadena, CA 91109-7068
E-mail: info@cph.com
Tel: (626) 795-9900 · Fax: (626) 577-8800

<u>Via Facsimile</u>

April 4, 2008

Suzanne Abbott
Google, Inc.
1600 Amphitheatre Parkway
Mountain View, CA 94043
Phone: 650-253-0000
Fax: 650-249-3429

**Re:** ***Calcar, Inc. et al. v. The California Cars Initiative, Inc., et al.***;
**CPH Ref. C685:100.1**

Dear Ms. Abbott:

      Thank you for speaking with me this morning. As you requested, enclosed is a copy of the protective order entered in this matter, which contains two tiers of protection for confidential information.

      You represented to me during our phone call that Google might be able to produce the subpoenaed documents by next week. Google, however, is required by subpoena to produce a witness for deposition on Monday, April 7, 2008 and Plaintiffs Calcar, Inc. and American Calcar, Inc need to receive the requested documents from Google prior to the deposition. Plaintiffs therefore request that Google produce all responsive, non-privileged documents by today, as required by the business records subpoena.

      Please have counsel for Google contact me today to confirm whether Google will produce all responsive, non-privileged documents by today and also to discuss the logistics and the identity of Google's deponent(s) for Monday's deposition.

Very truly yours,

G. Warren Bleeker

enclosure

James B. Christie   (1904-195?)
Robert L. Parker   (1920-198?)
C. Russell Hale   (1916-200?)

D. Bruce Prout
Walter G. Maxwell
David A. Dillard
Thomas J. Daly
Edward R. Schwartz
John D. Carpenter
Wesley W. Monroe
David A. Plumley
Gregory S. Lampert
Mark Garscia
Syed A. Hasan
Robert A. Green
Howard A. Kroll
Michael J. MacDermott
Anne Wang
Constantine Marantidis
Daniel M. Cavanagh
Gary J. Nelson
Raymond R. Tabandeh
Josephine E. Chang
Jun-Young E. Jeon
Brian K. Brookey
Tom H. Dao
David J. Steele
Gary S. Dukarich
Peter C. Hsueh
Oliver S. Bajracharya
Lauren E. Schneider
Saeid Mirsafian, Ph.D.*
Gabriel Fitch
Tiffany A. Parcher
Jonas J. Hodges
Steven E. Lauridsen
Patrick J. Orme
Nikki M. Dossman
Derek W. Yeung
G. Warren Bleeker
Jason C. Martone
Jeffrey T. Burgess
Uyen N. Tang
Joshua T. Chu
Anne F. Bradley
Joseph J. Mellema
Daniel L. Essig

**Patent Agent**
Brigitte C. Phan, Ph.D.

**Of Counsel**
Hayden A. Carney
Richard J. Ward, Jr.
Richard A. Wallen
Daniel R. Kimball
Richard J. Paciulan**

*Admitted only in IL
**Admitted only in MA

EXHIBIT A
PAGE 4



1   BRIAN K. BROOKEY, CA Bar No. 149522
    brian.brookey@cph.com
2   G. WARREN BLEEKER, CA Bar No. 210834
    warren.bleeker@cph.com
3   CHRISTIE, PARKER & HALE, LLP
    350 West Colorado Boulevard, Suite 500
4   Post Office Box 7068
    Pasadena, California 91109-7068
5   Telephone: (626) 795-9900
    Facsimile: (626) 577-8800
6
7   Attorneys for Plaintiff,
    CALCAR, INC. and AMERICAN
    CALCAR, INC.
8
9   [Full List of Attorneys on the Signature Page]



**NOTE CHANGES MADE BY THE COURT**

10              UNITED STATES DISTRICT COURT

11              CENTRAL DISTRICT OF CALIFORNIA

12   CALCAR, INC., a California          Case No. SACV07-723 AG (MLGx)
     corporation; and AMERICAN
13   CALCAR, INC., a Delaware corporation,
                                          **STIPULATED PROTECTIVE**
14              Plaintiffs,               **ORDER**

15        vs.

16   THE CALIFORNIA CARS
     INITIATIVE, INC., an unknown
17   business entity; and FELIX KRAMER,
     an individual,
18
                Defendants.
19

20

21        It is stipulated and agreed by and between counsel for Calcar, Inc. and

22   American Calcar Inc. ("Plaintiffs") on one hand, and counsel for The California

23   Cars Initiative, Inc. and Felix Kramer ("Defendants") on the other hand, that the

24   terms and conditions of this Stipulated Protective Order shall govern the handling

25   of documents, depositions, pleadings, exhibits and all other information

26   exchanged by the parties in this Action, or provided by or obtained from non-

27

28                              -1-

CHRISTIE, PARKER & HALE, LLP    DM_US:20970248_2

**EXHIBIT** _A_
**PAGE** _5_

1   parties in this Action.

2

3                              **SCOPE**

4       1.     This Protective Order shall apply to all documents, depositions,

5   pleadings, exhibits and all other material or information subject to discovery in

6   this Action, including responses to requests for production of documents, answers

7   to interrogatories, responses to requests for admissions, deposition testimony,

8   expert testimony and reports, and all other discovery taken pursuant to the Federal

9   Rules of Civil Procedure, as well as testimony adduced at trial, trial exhibits,

10   matters in evidence and any other information used or disclosed at trial, hereafter

11   furnished, directly or indirectly, by or on behalf of any party, non-party or witness

12   in connection with this Action ("Discovery Material").

13       2.     As used herein, "Producing Party" shall refer to any party to this

14   Action and to any non-party who gives testimony or produces documents or other

15   information, and "Receiving Party" shall refer to any individual who receives, is

16   shown, or is exposed to material or information pursuant to this Protective Order.

17                       **DESIGNATION**

18       3.     Any Producing Party may designate Discovery Material as

19   "CONFIDENTIAL" or as "ATTORNEYS' EYES ONLY" in accordance with this

20   Protective Order. The burden of establishing that Discovery Material is

21   CONFIDENTIAL or ATTORNEYS' EYES ONLY as defined herein shall be on

22   the Producing Party. The designation of any Discovery Information as

23   CONFIDENTIAL or ATTORNEYS' EYES ONLY shall be deemed effective

24   unless and until the Court orders otherwise or the Producing Party withdraws the

25   designation.

26       4.     Discovery Material falling into one or more of the following

27   categories may be designated as CONFIDENTIAL: information (regardless of

28                                      -2-

EXHIBIT_A
PAGE__6

1    how generated, stored or maintained) or tangible things that qualify for protection

2    under standards developed under Fed. R. Civ. P. 26(c) which shall only be

3    disclosed to the parties to this litigation and their respective counsel, as set forth

4    in paragraph 13 below.  Such information should fall into one or more of the

5    following categories: (i) sales, marketing, or product or service development

6    strategies, tactics or plans; (ii) financial data; (iii) costs of doing business; (iv)

7    customer lists; (v) business agreements and contracts; (vi) licensing negotiations

8    and agreements; and (vii) third-party documents covered by an obligation of

9    confidentiality.

10        5.    Discovery Material falling into one or more of the following

11    categories may be designated as HIGHLY CONFIDENTIAL -- ATTORNEYS'

12    EYES ONLY: information (regardless of how generated, stored or maintained) or

13    tangible things that are extremely sensitive -- such as trade secrets or highly

14    sensitive business or product expansion plans or developments -- and whose

15    disclosure to any person other than the parties' respective outside counsel

16    (including any future outside counsel), as set forth in paragraph 14 below, would

17    create a substantial risk of serious injury that could not be avoided by less

18    restrictive means.

19        6.    The Producing Party may designate documents or other Discovery

20    Material as CONFIDENTIAL or ATTORNEYS' EYES ONLY by placing either

21    of the following legends (or similar legends) on the document or thing:

22    CONFIDENTIAL - Civil Action No. 07-723 AG (MLGx) or ATTORNEYS'

23    EYES ONLY - Civil Action No. 07-723 AG (MLGx) provided, however, that in

24    the event that original documents are produced for inspection, the Receiving

25    Party and Producing Party shall agree jointly upon a mechanism to place the

26    appropriate legend on the documents in the copying process. CONFIDENTIAL or

27    ATTORNEYS' EYES ONLY materials shall not include any document,

28                                            -3-

EXHIBIT  4
PAGE  7

1    information or other materials that (a) are, at the time of disclosure, in the public

2    domain by publication or otherwise through no fault of the Receiving Party or, (b)

3    are not under law entitled to be treated as confidential.

4        7.    Any party or non-party may designate discovery requests or

5    responses (and the information contained therein) as CONFIDENTIAL or as

6    ATTORNEYS' EYES ONLY by placing either of the following legends (or

7    similar legends) on the face of any such document:

8        "Contains CONFIDENTIAL information. Designated parts not to be used,

9    copied or disclosed except as authorized by Court Order or the party or parties

10    whose CONFIDENTIAL information is included";

11        or

12        "Contains ATTORNEYS' EYES ONLY information. Designated parts not

13    to be used, copied or disclosed except as authorized by Court Order or the party

14    or parties whose ATTORNEYS' EYES ONLY information is included."

15        In the case of discovery requests or responses, a statement must also be

16    included within the document specifying the portion(s) thereof designated as

17    CONFIDENTIAL or as ATTORNEYS' EYES ONLY and the face of the

18    document and those pages containing CONFIDENTIAL or ATTORNEYS' EYES

19    ONLY information shall be so designated.

20        8.    Any party or non-party may designate depositions and other

21    testimony (including exhibits) as CONFIDENTIAL or as ATTORNEYS' EYES

22    ONLY by stating on the record at the time the testimony is given that the entire

23    testimony or portions thereof shall be designated as CONFIDENTIAL or as

24    ATTORNEYS' EYES ONLY. If entire testimony is designated

25    CONFIDENTIAL or ATTORNEYS' EYES ONLY, and the designating party

26    later determines that only portions of the previously designated testimony should

27    be designated CONFIDENTIAL or ATTORNEYS' EYES ONLY, the designating

28                                             -4-

1    party shall, within 30 days of receipt of the transcript, de-designate those portions
2    of the transcript that should not be designated as CONFIDENTIAL or
3    ATTORNEYS' EYES ONLY. In addition, a party may designate information
4    disclosed at such deposition as CONFIDENTIAL or ATTORNEYS' EYES
5    ONLY by notifying all of the parties in writing within fifteen (15) days of receipt
6    of the transcript, of the specific pages and lines of the transcript which should be
7    treated as CONFIDENTIAL or ATTORNEYS' EYES ONLY. The following
8    legends (or similar legends) shall be placed on the front of any deposition
9    transcript (and, if videotaped, any copies of the videotape) containing
10   CONFIDENTIAL or ATTORNEYS' EYES ONLY information:
11        "Contains CONFIDENTIAL information. Designated parts not to be used,
12   copied or disclosed except as authorized by Court Order or the party or parties
13   whose CONFIDENTIAL information is included";
14        or
15        "Contains ATTORNEYS', EYES ONLY information. Designated parts not
16   to be used, copied or disclosed except as authorized by Court Order or the party
17   or parties whose ATTORNEYS' EYES ONLY information is included."
18        9.    Subject to any overriding rules imposed by the Court in this Action,
19   all CONFIDENTIAL or ATTORNEYS' EYES ONLY material, or an excerpt,
20   reproduction or paraphrase thereof, filed with the Court shall be filed under seal
21   in accordance with Local Civil Rule 79-5. The Producing Party bears the burden
22   of proof to establish that the designated information should be filed under seal.
23   Where a moving party files and serves a written application to file
24   CONFIDENTIAL or ATTORNEYS' EYES ONLY information under seal, and
25   the moving party did not designate that information as CONFIDENTIAL OR
26   ATTORNEYS' EYES ONLY, the Producing Party may, within 5 court days from
27   the date that the moving party files its application, file and serve supplemental
28

-5-

EXHIBIT A
PAGE 7

1   papers supporting the Producing Party's contention that the information should

2   remain under seal. If the Court grants a party permission to file an item under

3   seal, a duplicate disclosing all non-confidential information shall be filed and

4   made a part of the public record. The item shall be redacted to eliminate

5   confidential material from the document. The document shall be titled to show

6   that it corresponds to an item filed under seal, e.g., "Redacted Copy of Sealed

7   Declaration of John Smith in Support of Motion for Summary Judgment." The

8   sealed and redacted documents shall be filed simultaneously.

9                                    <u>**USE**</u>

10          10.    All Discovery Material produced in this case, including Discovery

11   Material designated CONFIDENTIAL or ATTORNEYS' EYES ONLY shall be

12   used only in preparation for, and in, the trial of this Action or any appeal

13   therefrom and cannot be used for any other purpose including, but not limited to,

14   any other litigation, arbitration or claim. Nothing in this Protective Order shall

15   preclude   a   Producing   Party   from   using   or   disseminating   its   own

16   CONFIDENTIAL or ATTORNEYS' EYES ONLY material.

17          11.    All material designated CONFIDENTIAL or ATTORNEYS' EYES

18   ONLY shall be protected from disclosure as specified herein, unless a party

19   obtains an Order of the Court declaring that all or certain portions of such

20   Discovery Material are not, in fact, protected.

21          12.    Third parties may (i) designate deposition transcripts of their

22   witnesses and any documents or information they produce, whether voluntarily or

23   by subpoena, CONFIDENTIAL or ATTORNEYS' EYES ONLY to the same

24   extent and in the same manner as parties to this Action and any such materials

25   and information shall be treated by the parties to this Action in the same manner

26   as materials and information so designated by a party, and (ii) intervene in this

27   Action to enforce the provisions of this Protective Order as if they were a party.

28                                    -6-

EXHIBIT _A_
PAGE _10_

## DISCLOSURE

13.    Unless otherwise directed by the Court or authorized in writing by the Producing Party, Discovery Material designated as CONFIDENTIAL may be disclosed by the Receiving Party only to the following persons:

(a)    any "outside" attorney of record in this Action (including attorneys employed by firms of record but not otherwise identified specifically on pleadings, and the parties agree to identify those outside attorneys on request if not identified specifically on pleadings);

(b)    support personnel for attorneys listed in sub-paragraph (a) above, including law clerks, analysts, paralegals, interpreters, translators, secretaries, and clerical staff employed by any attorney identified in sub-paragraph (a) and assisting in connection with this Action;

(c)    any outside expert or consultant who is expressly retained or sought to be retained by any attorney described in sub-paragraph (a) to assist in the preparation of this Action for trial, with disclosure only to the extent necessary to perform such work;

(d)    no more than two designated persons representing each Party (including persons employed by affiliates) with whom counsel find it necessary to consult, in the discretion of such counsel, in preparation for trial in this Action;

(e)    any non-party interpreter, translator, or court or other shorthand reporter, videographer or typist translating, recording or transcribing testimony and who is not an employee of a Party or an employee of an affiliate of a Party;

(f)    service contractors (such as document copy services), jury consultants and graphic artists;

(g)    any person who authored and/or was an identified original recipient of the particular CONFIDENTIAL material sought to be disclosed to

-7-

EXHIBIT A
PAGE 11

1    that person, or any deponent where the examining attorney has a good faith basis

2    to believe the deponent is aware of the particular CONFIDENTIAL material

3    sought to be disclosed;

4          (h)   personnel of the Court, including Mediators (and their

5    assistants) assigned by the Court and all appropriate courts of appellate

6    jurisdiction; and

7          (i)    any person agreed to by the Producing Party in writing.

8      CONFIDENTIAL material shall not be disclosed to persons described in

9    paragraphs 13 (b), (c), (d), (e) (with respect to non-party interpreters or

10    translators), (f), (g) (with respect to any deponent when the examining attorney

11    has a good faith basis to believe the deponent is aware of the particular

12    ATTORNEYS' EYES ONLY material) or (i), unless and until such person has

13    executed the affidavit in the form attached as Exhibit A. CONFIDENTIAL

14    material shall not be disclosed to any person unless such person is authorized to

15    receive CONFIDENTIAL material pursuant to Paragraphs 13 and 15 of this

16    Protective Order.

17      14.    Unless otherwise directed by the Court or authorized in writing by

18    the Producing Party, Discovery Material designated as ATTORNEYS' EYES

19    ONLY may be disclosed by the Receiving Party only to the following persons:

20          (a)   any "outside" attorney of record in this Action (including

21    attorneys employed by firms of record but not otherwise identified specifically on

22    pleadings and the parties agree to identify those outside attorneys on request if not

23    identified specifically on pleadings);

24          (b)   support personnel for attorneys listed in sub-paragraph (a)

25    above, including law clerks, analysts, paralegals, secretaries, interpreters,

26    translators, and clerical staff employed by any attorney identified in sub-

27    paragraph (a) and assisting in connection with this Action;

28

-8-

1      (c) any outside expert or consultant who is expressly retained or

2    sought to be retained by any attorney described in sub-paragraph (a) to assist in

3    the preparation of this Action for trial, with disclosure only to the extent

4    necessary to perform such work;

5      (d) any non-party interpreter, translator, or court or other

6    shorthand reporter, videographer or typist translating, recording or transcribing

7    testimony and who is not an employee of a Party or an employee of an affiliate of

8    a Party;

9      (e) service contractors (such as document copy services), jury

10   consultants and graphic artists;

11     (f) any person who authored and/or was an identified original

12   recipient of the particular ATTORNEYS' EYES ONLY material sought to be

13   disclosed to that person or any deponent when the examining attorney has a good

14   faith basis to believe the deponent is aware of the particular ATTORNEYS'

15   EYES ONLY material sought to be disclosed;

16     (g) personnel of the Court and all appropriate courts of appellate

17   jurisdiction; and

18     (h) any person agreed to by the Producing Party in writing.

19     ATTORNEYS' EYES ONLY material shall not be disclosed to

20   persons described in paragraphs 14 (b), (c), (d) (with respect to non-party

21   interpreters or translators), (e), (f) (with respect to any deponent when the

22   examining attorney has a good faith basis to believe the deponent is aware of the

23   particular ATTORNEYS' EYES ONLY material) or (h), unless and until such

24   person has executed the affidavit in the form attached as Exhibit A.

25   ATTORNEYS' EYES ONLY material shall not be disclosed to any person unless

26   such person is authorized to receive ATTORNEYS' EYES ONLY material

27   pursuant to Paragraphs 15 and 16 of this Protective Order.

28

-9-

EXHIBIT _A_
PAGE _13_

15. At least seven (7) days before the disclosure of any CONFIDENTIAL or ATTORNEYS' EYES ONLY material of the Producing Party is made to an individual above in Paragraph 13, sub-paragraphs (c), (d) or (i) or Paragraph 14, sub-paragraphs (c), or (h), and where that individual is either (1) employed in the automotive industry, other than solely as a litigation expert or consultant (including survey experts and academics retained as expert witnesses), or (2) currently involved in providing goods and services to the automotive industry, other than solely as a litigation expert or consultant (including survey experts and academics retained as expert witnesses), an attorney for the Receiving Party shall serve a Notice on the Producing Party identifying said individual by name and including a curriculum vitae or equivalent resume setting forth such person's present residence and business address(es), current employer and job title, any company or companies by which that individual was employed during the past five (5) years, and a list of all consulting agreements or arrangements that said individual may have entered into during the past five (5) years. The list should disclose the name and address of each such entity for which consulting work is being, or has been, performed, and the subject matter of that consulting work. If disclosure of either the identity of the entity for which the work is being performed or the subject matter of that work, or both, is deemed proprietary by the Receiving Party, then the fact that certain information is being withheld on the basis that it is proprietary shall be disclosed by the Receiving Party, and any such information that is not deemed proprietary shall be disclosed. Such notice shall be accompanied by an executed acknowledgment from the individual to whom the disclosure is to be made, in the form of Exhibit A attached hereto. In the event that said individual enters into any subsequent consulting agreements or arrangements during the course of this litigation, the Receiving Party shall promptly notify the Producing Party of such agreements or arrangements. The

-10-

CHRISTIE, PARKER & HALE, LLP

DM_US:20970248_2

EXHIBIT _A_
PAGE _17_

1    Producing Party shall state any objections to the proposed disclosure of
2    CONFIDENTIAL or ATTORNEYS' EYES ONLY information to any individual
3    described in Paragraph 13, sub-paragraphs (c), (d), or (i) or Paragraph 14, sub-
4    paragraphs (c), or (h), and state the reasons therefore in writing to the Receiving
5    Party within six (6) days of receipt of the Notice. Upon the making of any such
6    objection(s), the Producing Party shall have ten (10) days (or any additional time
7    which may be agreed upon by the parties or granted by the Court) from sending
8    its objection(s) in which to challenge, by filing an expedited motion, the
9    disclosure of CONFIDENTIAL or ATTORNEYS' EYES ONLY information.
10    Unless the Producing Party objects to the disclosure and files an expedited motion
11    in accordance with the Notice and timing provisions of this Paragraph 15 and
12    Paragraph 29, the Producing Party waives its right to challenge the disclosure of
13    CONFIDENTIAL or ATTORNEYS' EYES ONLY information to the identified
14    individual(s), and the individual identified in the Notice shall be considered a
15    qualified recipient of CONFIDENTIAL or ATTORNEYS' EYES ONLY material
16    under the terms of this Protective Order. Should the Producing Party properly
17    object and file its expedited motion, CONFIDENTIAL or ATTORNEYS' EYES
18    ONLY material will not be disclosed pending resolution of the expedited motion.
19    Before the disclosure of any CONFIDENTIAL or ATTORNEYS' EYES ONLY
20    material of the Producing Party is made to an individual described above in
21    Paragraph 13, sub-paragraphs (c), (d) or (i), or Paragraph 14, sub-paragraphs (c)
22    or (h), an attorney for the Receiving Party shall obtain from each such person an
23    executed copy of the affidavit attached as Exhibit A and shall thereafter retain
24    such executed affidavits at least until the Termination of this Action (defined
25    below).
26        16.    The recipient of any CONFIDENTIAL or ATTORNEYS' EYES
27    ONLY material that is provided under this Protective Order shall maintain such

CHRISTIE, PARKER & HALE, LLP    DM_US:20970248_2

EXHIBIT  A
PAGE  15

1   information in a secure and safe area and shall exercise the same standard of due

2   and proper care with respect to the storage, custody, use and/or dissemination of

3   such information as is exercised by the recipient with respect to its own

4   proprietary information.

5                    **EXEMPTED MATERIALS**

6       17.    None of the provisions of this Protective Order shall apply to the

7   following categories of documents and information, and any party may seek to

8   remove the restrictions set forth herein on the ground that information designated

9   as CONFIDENTIAL or ATTORNEYS' EYES ONLY has/had been:

10              (a)    in the public domain at the time of its production hereunder;

11              (b)    in the public domain after the time of its production through

12  no act, or failure to act, on behalf of the Receiving Party, its counsel,

13  representatives or experts;

14      The parties will use their best efforts to resolve any dispute under this

15  Paragraph 17, before involving the Court.

16      18.    None of the limitations on disclosure of this Protective Order shall

17  apply to the following category of documents and information, and any party may

18  seek to remove the restrictions set forth herein on the ground that:

19              (a)    information designated CONFIDENTIAL or ATTORNEYS'

20  EYES ONLY does not fall within the definitions of "CONFIDENTIAL" or

21  "ATTORNEYS' EYES ONLY" set forth in Paragraphs 4, 5 and 6 above.

22      The Producing Party shall have the burden of proof of establishing that

23  Discovery Material challenged under this Paragraph 18 constitutes

24  CONFIDENTIAL or ATTORNEYS' EYES ONLY Discovery Material as defined

25  in Paragraphs 4, 5 and 6.

26                    **INADVERTENT PRODUCTION/DESIGNATION**

27      19.    The inadvertent production of documents subject to the attorney-

28                                    -12-

CHRISTIE, PARKER & HALE, LLP      DM_US:20970248_2

EXHIBIT A
PAGE 16

1    client privilege or the attorney work-product doctrine will not waive the attorney-

2    client privilege or the attorney work-product doctrine.  In addition, the fact that a

3    document was inadvertently produced shall not be used in any manner or

4    evidence in support of any such alleged waiver.  Upon a request from a party that

5    has inadvertently produced any document which it believes may be subject to the

6    attorney-client privilege or attorney work-product doctrine, each party receiving

7    said document shall return it and all copies within three (3) business days to the

8    Producing Party.    Nothing herein shall prevent the Receiving Party from

9    preparing a record for its own use containing the date, author, address(es), and

10    topic of the document and such other information as is reasonably necessary to

11    identify the document and describe its nature to the Court in any motion to

12    compel production of the document.  Such a record of the identity and nature of a

13    document may not be used for any purpose other than preparation of a motion to

14    compel in this Action.  After the return of the document(s), the Receiving Party

15    may challenge the Producing Party's claim(s) of privilege or work-product by

16    making a motion to the Court.

17          20.    The inadvertent failure by a party to designate Discovery Material as

18    CONFIDENTIAL or as ATTORNEYS' EYES ONLY shall not be a waiver of

19    such designation provided that the party who fails to make such designation

20    informs the Receiving Party that such Discovery Material is CONFIDENTIAL or

21    ATTORNEYS' EYES ONLY within seven (7) days from when the failure to

22    designate first became known to the Producing Party.    The party receiving

23    Discovery Material that the Producing Party inadvertently failed to designate as

24    CONFIDENTIAL or ATTORNEYS' EYES ONLY shall not be in breach of this

25    Order for any use made of such Discovery Material before the Receiving Party is

26    informed of the inadvertent failure to designate.  Once the Receiving Party has

27    been informed of the inadvertent failure to designate pursuant to this Paragraph

28                                                    -13-

EXHIBIT A
PAGE 12

1   20, the Receiving Party shall take reasonable steps to, at the Producing Party's

2   option, either ensure that all copies of any such Discovery Materials are returned

3   promptly to the Producing Party or ensure that all copies of any such Discovery

4   Materials are marked with the proper designation and distributed only as

5   permitted under Paragraphs 13 through 16 of this Protective Order. If data or

6   information has been extracted from any Discovery Materials that are

7   subsequently re-designated pursuant to this Paragraph 20, to the extent possible,

8   the information and/or data will be expunged and not used, or used only to the

9   extent allowed under this Protective Order pursuant to its new confidentiality

10   designation.

11       21.    In the event of disclosure of Discovery Materials designated

12   CONFIDENTIAL or ATTORNEYS' EYES ONLY to any person not authorized

13   to such access under this Protective Order, the party responsible for having made

14   such disclosure, and each party with knowledge thereof, shall immediately inform

15   counsel for the party whose Discovery Material has been disclosed of all known

16   relevant information concerning the nature and circumstances of the disclosure.

17   The party responsible for improperly disclosing such Discovery Material shall

18   also promptly take all reasonable measures to retrieve the improperly disclosed

19   Discovery Material and to ensure that no further or greater unauthorized

20   disclosure and/or use thereof is made.

21                          **USE IN COURTROOM PROCEEDINGS**

22       22.    In the event that any CONFIDENTIAL or ATTORNEYS' EYES

23   ONLY material is to be used in any court proceeding, the Producing Party may

24   seek an appropriate protective order from the Court before its introduction, ~~and in~~

25   ~~any event, it shall not lose its confidential status through such use~~, and the parties

26   shall take all steps reasonably required to protect its confidentiality during such

27   use. The disclosure status of any evidence presented in a

28   public court proceeding shall be determined by the Court.

-14-

EXHIBIT A
PAGE 18

1

2    ## OBJECTION TO DESIGNATIONS

3        23.    Any party may object to the designation by the Producing Party of

4    any material as CONFIDENTIAL or as ATTORNEYS' EYES ONLY. The

5    process for making such an objection and for resolving the dispute shall be as

6    follows:

7            (a)    The objecting party shall notify the Producing Party in writing

8    as to its objection(s) to the designations. This notice shall include, at a minimum,

9    a specific identification of the designated material objected to as well as the

10    reason(s) for the objection.

11            (b)    The objecting party shall thereafter have the burden of

12    conferring either in person or by telephone with the Producing Party claiming

13    protection (as well as any other interested party) in a good faith effort to resolve

14    the dispute.

15            (c)    Failing agreement, the objecting party may bring a noticed

16    motion to the Court for a ruling that the Discovery Material sought to be

17    protected is not entitled to such designation. The Producing Party bears the

18    burden to establish that the Discovery Material is CONFIDENTIAL or

19    ATTORNEYS' EYES ONLY and entitled to such protection under this Protective

20    Order.

21            Notwithstanding any such challenge to the designation of material as

22    CONFIDENTIAL or ATTORNEYS' EYES ONLY, all such material so

23    designated shall be treated as such and shall be subject to the provisions of this

24    Protective Order until one of the following occurs: (a) the party who designated

25    the material as CONFIDENTIAL or ATTORNEYS' EYES ONLY withdraws

26    such designation in writing, or (b) the Court rules that the designation is not

27    proper and that the designation be removed.

28                            -15-

CHRISTIE, PARKER & HALE, LLP    DM_US:20970248_2

EXHIBIT 4
PAGE 19

1

2

### RETURN/DESTRUCTION OF MATERIALS

3      24.    Not later than sixty (60) days after the Termination of this Action

4   (defined below) all CONFIDENTIAL or ATTORNEYS' EYES ONLY material,

5   including all copies and derivative works thereof, shall be returned to the

6   Producing Party or, with advance written consent of the Producing Party,

7   destroyed. The party receiving any CONFIDENTIAL or ATTORNEYS' EYES

8   ONLY material shall certify in writing that all such material, including

9   CONFIDENTIAL or ATTORNEYS' EYES ONLY material disclosed hereunder,

10  has been returned or destroyed. *The Court and its personnel are not subject to this provision.* JWJ

11                        ### MISCELLANEOUS PROVISIONS

12     25.    This stipulated Protective Order shall not prevent a party from

13  seeking additional protection of information for which the protection of this

14  Protective Order is not believed by such party to be adequate.   The parties,

15  however, may not withhold the production of information solely on the basis of a

16  confidentiality objection once this Order is effective.  If a party wishes to seek

17  additional protections beyond those contained within this Protective Order, the

18  burden is on that party to file a motion with the Court seeking such additional

19  protections.

20     26.    The entry of this Protective Order shall not be construed as a waiver

21  of any right to object to the furnishing of information in response to discovery

22  and, except as expressly provided, shall not relieve any party of the obligation of

23  producing information in the course of discovery.

24     27.    If at any time CONFIDENTIAL or ATTORNEYS' EYES ONLY

25  material is subpoenaed by any court, arbitral, administrative or legislative body,

26  the person to whom the subpoena or other request is directed shall immediately

27  give written notice thereof to counsel for every party who has produced such

28                                         -16-

CHRISTIE, PARKER & HALE, LLP    DM_US:20970248_2

1   CONFIDENTIAL or ATTORNEYS' EYES ONLY material and shall provide

2   each such party with an opportunity to object to the production of

3   CONFIDENTIAL or ATTORNEYS' EYES ONLY materials. If the Producing

4   Party does not move for a protective order within ten (10) days of the date written

5   notice is given, the party to whom the referenced subpoena is directed may

6   produce, on or after the date set for production in the subpoena but not prior to the

7   end of the ten (10) day notice period, such material in response thereto.

8          28.    Counsel for any party to this Protective Order shall have the right to

9   exclude from depositions, other than the deponent and the reporter, any person

10  who is not authorized under this Protective Order to receive materials or

11  information designated as CONFIDENTIAL or ATTORNEYS' EYES ONLY.

12  Such right of exclusion shall be applicable only during periods of examination or

13  testimony directed to CONFIDENTIAL or ATTORNEYS' EYES ONLY

14  material.

15         29.    All notices required by any paragraphs of this Protective Order are to

16  be made by facsimile or electronic mail to counsel representing the noticed party.

17  The date by which a party receiving notice shall respond or otherwise take action

18  shall be computed from the date of receipt of the notice.

19         Any of the notice requirements herein may be waived in whole or in

20  part, but only in a writing signed by an attorney for the Producing Party.    All

21  specified time periods are in calendar days unless otherwise indicated.

22         30.    Nothing in this Protective Order shall bar or otherwise restrict

23  counsel from rendering advice to his or her client with respect to this Action and,

24  in the course thereof, relying in a general way upon his or her examination of

25  CONFIDENTIAL or ATTORNEYS' EYES ONLY material produced or

26  exchanged in this Action; provided, however, that in rendering such advice and in

27  otherwise communicating with his or her client, the attorney shall not disclose the

28                                         -17-

CHRISTIE, PARKER & HALE, LLP     DM_US:20970248_2

EXHIBIT   A
PAGE      21

1  content of CONFIDENTIAL or ATTORNEYS' EYES ONLY material produced

2  by any other party or non-party.

3      31.    Execution of this Protective Order shall not constitute a waiver of the

4  right of any party to claim in this Action or otherwise that any documents, or any

5  portion thereof, are privileged or otherwise non-discoverable, or are not

6  admissible in evidence in this Action or any other proceeding.

7      32.    All persons receiving CONFIDENTIAL or ATTORNEYS' EYES

8  ONLY materials are enjoined from producing them to any other persons, except

9  in conformance with this Protective Order. Each individual who receives

10  CONFIDENTIAL or ATTORNEYS' EYES ONLY material agrees to subject

11  himself/herself to the jurisdiction of this Court for the purpose of any proceedings

12  relating to the performance under, compliance with, or violation of this Protective

13  Order.

14      33    For purposes of this Protective Order, "Termination of this Action"

15  is defined to mean the exhaustion of all appeals from orders and final judgments

16  in this Action or the settlement of this Action by the parties.

17      34.    The parties agree that the terms of this Protective Order shall survive

18  and remain in effect after the Termination of this Action. ~~The Court shall retain~~

19  ~~jurisdiction to hear disputes arising out of this Protective Order.~~

20      35.    Any party may move at any time to modify the terms of this

21  Protective Order. A party seeking to modify this Protective Order shall request

22  only the minimum modification as is reasonably necessary to address the grounds

23  upon which its motion to modify is based.

24      36.    Any headings used in this Protective Order are for reference purpose

25  only and are not to be used to construe or limit the meaning of any provision.

26      37.    This Protective Order may be executed in any number of

27  counterparts, all of which upon completed execution thereof by all parties,

28                      -18-

EXHIBIT A
PAGE 22

1   collectively shall be deemed to constitute one original.

2       IT IS SO STIPULATED.

3

4   DATED: *February 20, 2008*          CHRISTIE, PARKER & HALE, LLP

5                                       By
6                                       Brain K. Brookey, (SBN 149522)
                                        brian.brookey@cph.com
7                                       G. Warren Bleeker, (SBN 210834)
                                        warren.bleeker@cph.com
8                                       CHRISTIE, PARKER & HALE, LLP
                                        350 West Colorado Boulevard, Suite
9                                       500
                                        Post Office Box 7068
10                                      Pasadena, California 91109-7068
                                        Telephone: (626) 795-9900
11                                      Facsimile: (626) 577-8800

12                                      Attorneys for Plaintiff,
                                        CALCAR, INC. and AMERICAN
13                                      CALCAR, INC.

14

15  DATED: February 14, 2008           HOWREY LLP

16                                      By
17                                      William C. Rooklidge (SBN 134483)
                                        HOWREY LLP
18                                      2020 Main Street, Suite 1000
                                        Irvine, CA 92614-8200
19                                      Telephone: (949) 721-6900
                                        Facsimile: (949) 721-6910
20                                      E-mail: rooklidgew@howrey.com

21                                      Bobby A. Ghajar (SBN 198719)
                                        Joshua A. Burt (SBN 222302)
22                                      HOWREY LLP
                                        550 South Hope Street, Suite 1100
23                                      Los Angeles, California 90071
                                        Telephone: (213) 892-1800
24                                      Facsimile: (213) 892-2300
                                        E-mail: ghajarb@howrey.com
25                                      E-mail: burtj@howrey.com

26                                      Attorneys for Defendants
                                        The California Cars Initiative, Inc. and
27                                      Felix Kramer

28                                      -19-

IT IS SO ORDERED.
DATED: *February 26, 2008*

UNITED STATES MAGISTRATE JUDGE

CHRISTIE, PARKER & HALE, LLP

DM

EXHIBIT _A_
PAGE _23_

```
***********************
***   TX REPORT   ***
***********************

TRANSMISSION OK

TX/RX NO             4756
RECIPIENT ADDRESS    916502493429
DESTINATION ID
ST. TIME             04/04 11:45
TIME USE             06'37
PAGES SENT           21
RESULT               OK
```

# facsimile
## TRANSMITTAL

**Date:** April 4, 2008

**No. of Pages:** 21 (including this cover sheet)

**Fax No.:** (650) 249-3429

## PLEASE DELIVER THE FOLLOWING PAGES IMMEDIATELY TO:

**Name:** Suzanne Abbott
Google, Inc.

**Phone:** (650) 253-0000

**Your Ref:**

**From:** G. Warren Bleeker

**Re:** Calcar, Inc. et al. v. The California Cars Initiative, Inc., et al.

**File:** C685:100.1

EXHIBIT A
PAGE 24

# facsimile
## T R A N S M I T T A L

| | |
|---|---|
| **Date:** | April 4, 2008 |
| **No. of Pages:** | 21 (including this cover sheet) |
| **Fax No.:** | (650) 249-3429 |

### PLEASE DELIVER THE FOLLOWING PAGES IMMEDIATELY TO:

| | |
|---|---|
| **Name:** | Suzanne Abbott |
| | Google, Inc. |
| **Phone:** | (650) 253-0000 |
| **Your Ref:** | |
| **From:** | G. Warren Bleeker |
| **Re:** | Calcar, Inc. et al. v. The California Cars Initiative, Inc., et al. |
| **File:** | C685:100.1 |

**Christie, Parker & Hale, LLP**
350 West Colorado Boulevard
Post Office Box 7068
Pasadena, CA 91109-7068
626-795-9900
Fax: 626-577-8800

**For Office Services Use Only**
**Return Fax to Sonia Casas**

## privileged and confidential

*The information contained in this transmission is attorney-client privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is prohibited. If you have received this communication in error, please notify us immediately by telephone collect, and return the original message to us at the above address via U.S. mail. We will reimburse you for postage. Thank you.*

EXHIBIT 4
PAGE 25

Exhibit B

*calcars-google-due-diligence25feb07.doc*     *Page 1 of 5*

**From:**   Felix Kramer, CalCars
**To:** Kirsten Olsen, Google.org
**Date:**   2/25/07
**Re:**    CalCars Due Diligence Report

As we discuss at http://www.calcars.org/sponsor.html, The California Cars Initiative (CalCars) is a
fiscal agent of our fiscal sponsor -- we are a Project of the International Humanities Center (IHC) --
see its IRS "Letter of Determination" as a 501(c)(3). Some of our organizational categories belong to
IHC; we plan to incorporate as an independent non-profit in the near-term future.

Some of the material that follows is derived from the "Calcars Expansion Plan to Speed PHEV
Commercialization proposal (calcars-policy-budget-23jan07.doc) that, most recently, was the basis
for our request for support.

Research/Background on Organization

1.  EIN : 33-0767921 (IHC)

2.  Board of Directors (include bios)

**International Humanities Center Board of Directors** — see http://www.ihcenter.org

**Catherine Carroll,** (Financial Director of IHCenter) co-founding director of the Renaissance
Foundation; dedicated to empowering people and projects; accounting and tax preparation
industries; tax planning, money management, and estate planning. Her insights show others how to
minimize income and estate taxes to expand the possibilities for change at a grass-root as well as
corporate level.
**Timothy Hall,** two tours in Vietnam earning him a Bronze Star and other medals; founder of Eco
Ranchos, a company based in the US and Mexico dedicated to environmentally sound agriculture
supporting sustainable communities; reintroduced the native amaranth grain to regions of Mexico as
well as spearheaded pioneering efforts in the fig industry; co-founder of Paulownia International
Ltd. that meets the agricultural, commercial, environmental, and social needs of regions in Mexico
through development of widespread use of the Paulownia tree for the international plywood market.
**Katherine O'Flahtery,** former systems analyst and training manager with Fingerhut Corporation;
quality assurance troubleshooter for Wal-Mart Logistics; currently applies skills and expertise to
streamline educational processes to high levels of efficiency and understanding in personal health,
lifestyle, and well being; fully dedicating her life and livelihood to the health and well being of all
persons seeking education and self empowerment through natural health care; currently enrolled in
the certification program with Tree of Light Institute.
**Dave Sanders,** (Operations Director of IHCenter) research and development in sustainable
technologies; active in organic farming, sustainable forestry, eco-responsible construction systems,
and renewable energy generation; past president of an international nutritional products company
and owned several for-profit ventures; holds a distant background of seventeen years in
administrative and engineering positions with government contractors such as GE-Nuclear, a
Department of Energy contractor, and FMC, a Department of Defense contractor; has since
reversed his course fifteen years ago applying his body, mind, and spirit to the development and
integration of sustainable living systems and the deployment of ecologically responsible
development.
**Steven Sugarman,** M.A. in Research Psychology (Executive Director of IHCenter); former

EXHIBIT  B
PAGE  26

*calcars-google-due-diligence25feb07.doc*        *Page 2 of 5*

Executive Director of the Social & Environmental Entrepreneurs (SEE); Co-Founder, Bolsa Chica
Stewardship Group; author of The Blueprint for Planetary Evolution, as well as an avid creator of
conceptual statistical models that are translated into games of strategy and probability.
**David Michael Tanner,** alchemic formulating, research and development of alchemic mineral,
herbal, and essential oil formulas as well as other organic and inorganic substances; strong
background in business administration and marketing; owned and managed two R&D laboratories;
served as executive vice president to two international natural health product companies; currently
working with Tree of Light Publishing, a distributor of herbal training, health education, and natural
health products aligned with natural, healthful ways of living.

## CalCars Key Advisors (from http://www.calcars.org/about.html

<u>Dave Bagshaw</u>, Senior Advisor, an entrepreneur with a background both in technical engineering
and business, former CEO of Shutterfly and a senior executive at Excite@Home, @Home
Networks and the early Silicon Graphics. See announcement at the <u>CalCars-News Archive</u>.
<u>Gail Slocum</u>, Senior Advisor, former Mayor, Menlo Park and Regulatory Attorney at Pacific Gas
and Electric Company.
**Andy Frank,** Director, <u>advanced hybrid vehicle research center</u> (which has built 9 plug-in hybrid
proof-of-concept vehicles), Professor, University of California at Davis; see a 2003 interview in
EVWorld, <u>part 1</u> and <u>part 2</u> and a 2006 <u>Wall Street Journal profile</u>.
**Daniel M. Kammen,** Director, <u>Renewable and Appropriate Energy Laboratory</u>, Professor, UC
Berkeley, leading expert on renewable energy and climate change mitigation policy. His recent
studies on ethanol have reversed decades of thinking on manufacturing efficiencies and proved
ethanol's positive balance.
**Paul Scott,** Santa Monica-based electric vehicle owner, Co-Founder of <u>Plug In America</u>, works in
the visual effects industry on feature films, and represents <u>Energy Efficiency Solar</u> for commercial
and residential photovoltaic cell installations in Southern California.
**Sven Thesen,** electric utility analyst, chemical/environmental engineer, new parent

3. Officers (include bios)-Full-time intermittently-paid staff

**Founder** <u>Felix Kramer</u> is a marketing strategist and communicator with an entrepreneurial track
record with startups; in the environmental realm, he has managed major events and run campaigns
and organizations. After founding, running and selling a small Internet company, since 2001 he has
volunteered his time to CalCars. See <u>Kramer Communications</u> and <u>Felix Kramer Bio</u>, his Feb. 14,
2005 OpEd on global warming, <u>Kyoto and Beyond</u>. and <u>Power, Plugs and People</u>, his blog.
<u>Ron Gremban</u>, **Technology Development Lead** and electrical and software engineer involved in
sales of solar energy systems, has long experience with electric cars -- he helped design and drive the
Caltech entry in the transcontinental 1968 Great Electric Car Race. See his not-recently-updated <u>bio</u>.

EXHIBIT _B_
PAGE _27_

*calcars-google-due-diligence25feb07.doc*      *Page 3 of 5*

4.  Identity of key funders and amounts (top 10) Totals from Jan. 2006-Jan. 2007

| Amount | Donor |
|---|---|
| $194,664.69 | Carl Berg/Mission West |
| $92,561.40 | Carl B Page |
| $20,000.00 | Anonymous donor |
| $10,000.00 | Lori Park |
| $10,000.00 | Pacific Gas and Electric Company |
| $9,000.00 | Severns Family Foundation |
| $5,000.00 | Cypress Semiconductor Corp |
| $5,000.00 | Dawson Family Fund |
| $5,000.00 | Novellus Systems Inc |
| $5,000.00 | The Kathryn/Paul Miller Family Fund |
| 356,226.09 | **Total Top 11** |
| 156,123.52 | Additional donations |
| **$512,349.61** | **TOTAL ALL DONORS** |

5.  Summary of program / description for project requiring funding (executive overview)

In our Jan 23 proposal, we requested a six-month $498,000 grant to enable CalCars to achieve our
#1 priority: getting auto-makers to commercialize PHEVs. We proposed advocacy, business and
technology efforts aimed at leading to initial production and demonstration fleet commitments from
automakers. We believe our efforts could significantly shorten the time before substantial numbers
of PHEVs are in use. The efforts described below are in addition to our current technology
demonstration projects.

We have customized strategies for each auto-maker. They include/reflect
1. external demand-side campaigns and approaches along with partners to OEMs.
2. our "no-worry" plan to remove battery risk factors for a PHEV demonstration fleet;
3. We will lead, coordinate and partner on policy and government initiatives:
* in Sacramento towards a unified Plug-In California Initiative to make CA the leader in
commercialization of PHEVs, including incentives, regulatory exemptions and "whatever it takes"
measures to create an inviting environment for OEMs
* in Washington leading to changes in regulatory requirements and leveraged public funds,

6.  Staffing, business model, organizational plan

We have two full-time staff and hope to expand with three more full-time equivalent people plus
minimal administrative support.

**Budget/Use of Funds**
1.  Overall organization budget (please attach) Proposed budget from Jan 23, 2007. We hope to
raise the balance of these funds to accomplish our goals. (Technical Lead and technical
projects funded from other sources.)

EXHIBIT __B__
PAGE __28__

*calcars-google-due-diligence25feb07.doc*       *Page 4 of 5*

**Six-Month Budget (March 2007-August 2007) (Positions are Full-Time Equivalent)**

$ 72,000 founder
  72,000 communications director
  72,000 policy director/grant-writer
  72,000 campaign organizer/networker
  60,000 multimedia documentation/ads production/distribution, PR
  75,000 conferences, expositions, travel, memberships
  60,000 collateral design and production/signage/printing
  15,000 misc overhead
$ 498,000 TOTAL"

2. Detailed outline for use of Google.org funds with attached budget

In view of the expected shortfall between our request and funds we may receive from Google, we will recruit some or between three and six people to fulfill these functions part-time or full-time on short-term contracts, some on minimal stipends, with no guarantee of continued contract renewals.

3. Additional funds needed to carry out program

To the extent we are able to raise additional funds from other sources to complete financing for the initial plan for six months and additional funds thereafter, we will be able to contract with or retain the personnel described, and attend conferences, produce and distribute collateral material, etc.

4. Financial management systems for organization

As fiscal agent, Felix Kramer authorizes direct payments from IHC to vendors and materials/service providers by approving and submitting invoices using IHC forms with standard accounting categories. He also invoices to reimburse expenses for which he pays in advance by check or credit card. We will replace this with new systems when we become an indepedent non-profit.

5. Key milestones for Google.org grant money

Our most fundamental milestones are reflected at <u>What are Car-Makers Saying?</u> our page that tracks the evolving responses of automakers and at <u>The CalCars News-Archive</u> .

**Reporting**
1. Desired outcomes - short and medium-term (and metrics to be used)

Short- and medium-term, we engage in advocacy, business and technology efforts to gain initial production and timetable commitments for demonstration fleets. We would apply as the most significant metrics the volume of campaigns and activities we conduct, the number of PHEV conversions we help to inspire, and number of commitments by companies to PHEV production..

2. Long term impact sought by organization (and theory of change)

We aim to ensure the successful commercialization of PHEVs, their progressive technical optimization and product improvement to ensure cleaner air quality, lower transportation impact on

EXHIBIT _B_
PAGE _29_

*calcars-google-due-diligence25feb07.doc*    *Page 5 of 5*

climate change and lower dependency on foreign oil.

We hope to promulgate some of the strategies embodied by CalCars into other climate change-related campaigns.

   3.   Expected reporting deliverables to Google.org from CalCars

We report on the results of our efforts and those of our partners and allies with frequent updates at Car-Makers and News-Archive pages referenced above.

   4.   Timeline for reporting

We plan to provide quarterly or semi-annual reports.

## Advocacy Disclosures

   1.   Description of any type of advocacy that will be undertaken by the organization

We provide technical advice and non-partisan analysis and research to individuals, companies and government bodies. We provide industry examples by doing conversions and making those conversions available for demonstration at public venues. We publicize existing, and promote future, activities by individuals, NGOs, corporations and all levels of government to build a market of buyers for PHEVs and to encourage commercialization and mass production of PHEVs.

   2.   Intended audience for advocacy

Our audiences are individual citizens as consumers and car-owners, as well as opinion leaders in the public and private sector, including community leaders, journalists and business analysts, government employees, appointees and elected officials.

   3.   List any intended activities with government officials and specific use of Google.org funds

We testify at public hearings and communicate with government officials regarding rule-making and policy options. We do not endorse individual politicians. As a mostly- volunteer organization, we spend insubstantial funds on direct lobbying or on grassroots lobbying. Our role in relation to legislation is to provide information on specific news, proposals and bills, analyzing their social, economic and environmental implications to enable CalCars volunteers and those who subscribe to our CalCars-News information service to find out the positions of their elected officials and convey their views to other NGOs and to their elected officials.

## Fraud or Abuse

   1.   Disclosure of any accusations of fraud or abuse by the organization

We know of no accusations of fraud or abuse by The California Cars Initiative.

EXHIBIT B
PAGE 30

INTERNAL REVENUE SERVICE
P. O. BOX 2508
CINCINNATI, OH  45201

Date:  **MAY 23 2002**

INTERNATIONAL HUMANITIES CENTER
321 N MALL DR STE I 201
ST GEORGE, UT  84790

DEPARTMENT OF THE TREASURY

Employer Identification Number:
  33-0767921
DLN:
  17053089754062
Contact Person:
  TRACY D POST                    ID# 31471
Contact Telephone Number:
  (877) 829-5500
Our Letter Dated:
  December 1998
Addendum Applies:
  No

Dear Applicant:

    This modifies our letter of the above date in which we stated that you
would be treated as an organization that is not a private foundation until the
expiration of your advance ruling period.

    Your exempt status under section 501(a) of the Internal Revenue Code as an
organization described in section 501(c)(3) is still in effect.  Based on the
information you submitted, we have determined that you are not a private
foundation within the meaning of section 509(a) of the Code because you are an
organization of the type described in section 509(a)(1) and 170(b)(1)(A)(vi).

    Grantors and contributors may rely on this determination unless the
Internal Revenue Service publishes notice to the contrary.  However, if you
lose your section 509(a)(1) status, a grantor or contributor may not rely on
this determination if he or she was in part responsible for, or was aware of,
the act or failure to act, or the substantial or material change on the part of
the organization that resulted in your loss of such status, or if he or she
acquired knowledge that the Internal Revenue Service had given notice that you
would no longer be classified as a section 509(a)(1) organization.

    You are required to make your annual information return, Form 990 or
Form 990-EZ, available for public inspection for three years after the later
of the due date of the return or the date the return is filed.  You are also
required to make available for public inspection your exemption application,
any supporting documents, and your exemption letter.  Copies of these
documents are also required to be provided to any individual upon written or in
person request without charge other than reasonable fees for copying and
postage.  You may fulfill this requirement by placing these documents on the
Internet.  Penalties may be imposed for failure to comply with these
requirements.  Additional information is available in Publication 557,
Tax-Exempt Status for Your Organization, or you may call our toll free
number shown above.

    If we have indicated in the heading of this letter that an addendum
applies, the addendum enclosed is an integral part of this letter.

                                              Letter 1050 (DO/CG)

                                    EXHIBIT  _B_
                                    PAGE  _31_

1

## CERTIFICATE OF SERVICE

2

3        I certify that on May 6, 2008, I electronically filed the document described

4   as **SUPPLEMENTAL DECLARATION OF G. WARREN BLEEKER IN**

5   **SUPPORT OF PLAINTIFFS' MOTION TO COMPEL RULE 30(B)(6)**

6   **DEPOSITION TESTIMONY FROM THIRD PARTY GOOGLE, INC.**  with

7   the Clerk of the Court using the ECF system which will send notification of such

8   filing to the parties.  I further certify that I have mailed a true copy of the above

9   document via U.S. Mail to the non-ECF participants addressed as follows:

10                      Michael Thomas Zeller
                     Quinn Emanuel Urquhart Oliver
11                           & Hedges LLP
12                  865 South Figueroa Street, 10th Floor
                        Los Angeles, CA  90017
13

14

15

16                              /s/
                                    Susan Lovelace
17

18

19

20

21

22

23

24

25

26

27

28

CHRISTIE, PARKER & HALE, LLP