1  **ART HASAN, CA Bar No. 167323**
   art.hasan@cph.com
2  **BRIAN K. BROOKEY, CA Bar No. 149522**
   brian.brookey@cph.com
3  **G. WARREN BLEEKER, CA Bar No. 210834**
   warren.bleeker@cph.com
4  **CHRISTIE, PARKER & HALE, LLP**
   **350 West Colorado Boulevard, Suite 500**
5  **Post Office Box 7068**
   **Pasadena, California 91109-7068**
6  **Telephone: (626) 795-9900**
   **Facsimile: (626) 577-8800**
7
   Attorneys for Plaintiffs,
8  CALCAR, INC. and AMERICAN CALCAR, INC.

9

10

                        UNITED STATES DISTRICT COURT
11
                      NORTHERN DISTRICT OF CALIFORNIA
12

13

| | |
|---|---|
| CALCAR, INC., a California corporation; and AMERICAN CALCAR, INC., a Delaware corporation, | Case No. 3:08-MC-80083 MHP (WDBx) |
| | Underlying Civil Action Pending in U.S. District Court for the Central District of California (Civil Action Case No. SACV07-00723) |
| Plaintiff(s), | |
| vs. | **PLAINTIFFS' REPLY BRIEF IN SUPPORT OF ITS MOTION TO COMPEL DEPOSITION TESTIMONY OF DAVE BAGSHAW** |
| THE CALIFORNIA CARS INITIATIVE, INC., an unknown business entity; and FELIX KRAMER, an individual, | |
| Defendant(s). | **DATE:    August 6, 2008** |
| | **TIME:    4:00 p.m.** |
| | **CTRM:    4, 3rd Floor** |
| | **Honorable Wayne D. Brazil** |

CHRISTIE, PARKER & HALE, LLP

## I.    INTRODUCTION

It is undisputed that Dave Bagshaw served as Senior Advisor to Defendant The California Cars Initiative ("CalCars") and was actively involved in shaping CalCars' key initiatives regarding the organization of a spin-off "for-profit" company.  According to Mr. Bagshaw, his responsibility was to "motivate car-makers to starting [sic] building thousands of PHEVs for public and private fleets and early adopters."  CalCars' main defense to the underlying trademark dispute is that there is no likelihood of confusion because CalCars is merely an advocacy group and is not a "for-profit" company.  One of Plaintiff Calcar's key allegations is that CalCars improperly uses the CALCAR mark when communicating with Calcar's "car-maker" customers.  Thus, Mr. Bagshaw's personal knowledge regarding CalCars' "for-profit" efforts and his meetings with car-makers (*i.e.,* Calcar's customers) on behalf of CalCars, is highly probative as to the likelihood of confusion between Calcar and CalCars.

In his opposition, Mr. Bagshaw attempts to blame everyone else for his failure to appear for deposition, including the process server who served him, a separate process server who served another Senior Advisor for CalCars, Plaintiffs' counsel, and even Plaintiffs' counsel's secretary.  CalCars is likely attempting to stonewall this deposition because it is concerned that Mr. Bagshaw's testimony would be detrimental to CalCars' tenuous defense theory.  This is not a proper basis for Mr. Bagshaw to stand in contempt of a deposition subpoena.

## II.    MR. BAGSHAW HAS INFORMATION THAT IS HIGHLY PROBATIVE TO THE CLAIMS AND DEFENSES AT ISSUE IN THIS TRADEMARK INFRINGEMENT CASE.

Mr. Bagshaw's role at CalCars is essentially undisputed:

- Mr. Bagshaw served as a Senior Advisor to CalCars starting in December 2006. *See* Declaration of G. Warren Bleeker in Support of Motion To Compel ("Bleeker Decl."), Exh. C.
- Mr. Bagshaw was "actively involved in shaping key initiatives" of CalCars including "possible organization of a spin-of [sic] for-profit company." *Id.*, Exh.

-2-

H.

- In his role as CalCars' Senior Advisor, Mr. Bagshaw publicly stated "Now I want to help CalCars motivate car-makers to starting [sic] building thousands of PHEVs for public and private fleets and early adopters." *Id.*, Ex. C.

- As CalCars' Senior Advisor, Mr. Bagshaw was given access to a CalCars email address --dbagshaw@calcars.org. *Id.*, Ex. D.

- As CalCars' Senior Advisor, Mr. Bagshaw was asked to meet with numerous individuals regarding commercialization efforts. *See, e.g., Id.*, Exh. D at p. 16 (meeting with John Heaton); at p. 25 (meeting with Randy Reisinger); at p. 28 (meeting with General Motors); at p. 33 (provided feedback re: Visionary Vehicles).

Mr. Bagshaw asserts in his declaration opposing the motion to compel that since July 2007, he has "not been a volunteer with TCCI." Bagshaw Decl., ¶ 3. Mr. Bagshaw's carefully worded testimony does not state that he ended his affiliation with CalCars (TCCI) or even stepped down as a Senior Advisor in July 2007. It is certainly possible that Mr. Bagshaw remained as an employee, consultant or simply "Senior Advisor" since that time. In fact, the documents produced by CalCars indicate that Mr. Bagshaw communicated with CalCars' principal Felix Kramer, in an advisory role past July 2007. Bleeker Decl., Ex. D at pp. 30-33. Regardless, it is clear that during his time at CalCars, whether it was eight months or longer, Mr. Bagshaw's personal involvement in shaping key initiatives and organizing spin-off for-profit companies left Mr. Bagshaw with unique knowledge that is discoverable in this case. Mr. Bagshaw's knowledge of events that occurred during his affiliation with CalCars did not vanish simply because he claims to no longer be a volunteer for CalCars.

Throughout this litigation, and most recently in the summary judgment briefing, CalCars has attempted to stake out the position that it is "an advocacy organization" only and is "not in the business of selling modified PHEVs to the public, and it is not a wholesale or consumer products company." CalCars further claims that it "does not sell automobiles, automobile parts, visual displays, computer software, or manuals, and it ***has no future plans to***

-3-

1   *do so.*" CalCars Memo of Points & Auth. in Support of Motion For Summary Judgment, filed

2   on June 30, 2008 at 3 [Doc. 101] (attached as Exh. H to Supplemental Declaration of G.

3   Warren Bleeker ("Suppl. Bleeker Decl.") (emphasis added).

4        In its reply brief in support of its Motion For Summary Judgment, CalCars argues that

5   there can be no trademark infringement because the parties provide "disparate products and

6   services." In support of this claim, CalCars again reiterates:

7        Defendants explained and proved that TCCI [CalCars] is a non-profit advocacy

8        organization which does not sell any automotive "products," it is not a "commercial

9        venture," and it has no "customers" *per se*. . . . [Plaintiffs] fail to identify what "products

10       TCCI [CalCars] sells to what customers, much less their relatedness to the products

11       Plaintiffs allegedly brand as "CALCAR."

12  CalCars' Reply Brief in Support of CalCars' Motion For Summary Judgment filed July 14, 2008

13  at 12 [Doc. 143] (attached as Exh. I to Suppl. Bleeker Decl.).[1]

14       These broad statements stand in stark contrast to the purported role of Mr. Bagshaw,

15  who is highly touted by CalCars' principal as being retained to identify, organize and develop

16  spin-off "for-profit companies." Calcar is entitled to learn from Mr. Bagshaw what steps he

17  took on behalf of CalCars to commercialize CalCars' plug-in hybrid technology that it is

18  developing, including the potential products, potential customers, potential business partners,

19  estimated timeframe and projected profits, among other relevant information. Mr. Bagshaw's

20  and CalCars' public remarks regarding Mr. Bagshaw's role indicate that Mr. Bagshaw had

21  numerous meetings with automakers to discuss commercialization efforts. These same

22  automakers are customers of Plaintiffs. Mr. Bagshaw's testimony would be directly tied to

23  whether there is a likelihood of confusion between Calcar's products and services and CalCars'

24  potential products and services. This testimony is also directly relevant to actual confusion.

25  Calcar is entitled to inquire of Mr. Bagshaw whether any prospective business partner or

26  customer expressed confusion between Plaintiff Calcar and Defendant CalCars.

27

28  [1] CalCars repeats these same claims in its opposition to this motion at page 1.

CHRISTIE, PARKER & HALE, LLP

1    Further, Mr. Bagshaw's personal knowledge is directly relevant to the eighth *Sleekcraft*

2    factor, likelihood of expansion of product lines.  Mr. Bagshaw carefully states in his declaration

3    that CalCars "has no products or goods and I have played no role in promoting these non-

4    existent products and have no knowledge of any information related thereto."  Bagshaw Decl.

5    at ¶ 6.  Even if this statement is taken at face value,[2] Mr. Bagshaw remains completely silent as

6    to his knowledge and efforts regarding *potential* or *future* products that might be sold or

7    promoted by CalCars.  Calcar is entitled to depose Mr. Bagshaw regarding his efforts to create

8    a market for, promote and partner with other companies to sell these products and services for a

9    profit in the future -- evidence which is directly related to the eighth *Sleekcraft* factor.

10    Mr. Bagshaw's personal knowledge regarding CalCars' efforts and attempts to organize

11    a spin-off for-profit company almost certainly contradicts CalCars' litigation story that it is

12    merely a non-profit[3] advocacy group and has no plans to commercialize.  It appears that

13    Defendants have pressured Mr. Bagshaw to disobey the subpoena because of the inconvenient

14    truth that Mr. Bagshaw's personal knowledge about CalCars' efforts to commercialize itself

15    would severely undercut CalCars' defense strategy.  CalCars attempts to justify this by baldly

16    asserting that the information Mr. Bagshaw would provide "would already have been provided

17    in TCCI's document production or depositions of TCCI's principals [Kramer and Gremban]."

18    *See* CalCars' Opp'n to Motion To Compel at 5:2-4.  This assertion is not true.  As was

19    discovered during Mr. Gremban's deposition, CalCars' counsel (Howrey, the same firm who

20

21    [2] CalCars' website promotes CalCars as a business partner of numerous for-profit companies
      and Felix Kramer admitted that CalCars has a symbiotic relationship with these for-profit
22    companies. 6/25/08 Kramer Depo., at 347:2-14 (attached as Exhibit J to Suppl. Bleeker Decl.)

23    [3] It turns out that CalCars is not a "non-profit," but a fictitious business name that Felix Kramer
      uses to generate revenue for himself. When "CalCars" receives a donation, it does not go into a
24    CalCars bank account. CalCars has none. Instead, money is funneled through an entity called
      the International Humanities Center ("IHC"). When Mr. Kramer wants money, he simply bills
25    the IHC at the rate of $12,000 per month, and if the money is available and paperwork is filled
      out correctly, IHC pays Mr. Kramer, no questions asked. 6/25/08 Kramer Depo. Tr. at 417:19-
26    419:13; 421:2-422:17. (Suppl. Bleeker Decl.; Exh. J). When Mr. Kramer cashes his large
      checks from IHC, they do not go into a special account for the benefit of CalCars. They go into
27    his personal bank account, where are they are commingled with his other personal funds. *Id.* at
28    303:21-304:1.

CHRISTIE, PARKER & HALE, LLP

1   represents Mr. Bagshaw) did not even search the records of Mr. Gremban, one of CalCars'

2   principals, as part of CalCars' document production. In fact, CalCars has yet to produce any

3   documents from Mr. Gremban, despite Calcar's demands for such information. Suppl. Bleeker

4   Decl., ¶ 4. Mr. Bagshaw certainly does not purport to have searched his files or produced any

5   documents either. Moreover, what transpired during private meetings and conversations

6   between Mr. Bagshaw (on behalf of CalCars) and third parties has not been produced. *Id.* Mr.

7   Kramer has never testified that he has personal knowledge of meetings or conversations

8   between Mr. Bagshaw and third parties and Mr. Bagshaw has never denied that he has such

9   knowledge. Mr. Bagshaw, therefore, has unique, relevant information and Calcar is entitled to

10  take his deposition to learn that information prior to trial.[4]

11          In addition, Calcar's products and CalCars' plug-in hybrid technology are closely

12  related. Mr. Bagshaw's statement in his opposition brief that Calcar's products "are totally

13  unrelated to PHEVs" is demonstrably false. Mr. Bagshaw proclaims to have no knowledge of

14  one particular patent owned by Plaintiff American Calcar, Inc., which Mr. Bagshaw

15  mischaracterizes as "air conditioning in cars." Bagshaw Decl., ¶ 6. To be clear, American

16  Calcar, Inc. holds almost four dozen patents relating to automobile information systems and

17  other automotive comfort and control technology, including patents that concern or are useable

18  with hybrid vehicles, and Calcar, Inc. holds a few more. *See, e.g.*, Patent Registration Numbers

19  6,438,465; 6,330,497; 6,587,759; 6,542,795; and 6,459,961 (all related to multimedia

20  information and control system for use in an automobile) (attached as Exhibits L-P to Suppl.

21  Bleeker Decl.) Plaintiffs market their appropriate patents to automakers and suppliers to induce

22  them to adapt and license this technology. Decl. of Michael Obradovich in Support of

23  Plaintiffs' Motion For Partial Summary Judgment at ¶ 9 (attached to Suppl. Bleeker Decl. as

24  Exh. Q). Plaintiffs' patents cover visual display devices that are very similar to the plug-in

25  hybrid conversion kits promoted by CalCars. Mr. Bagshaw's purported lack of knowledge of

26  Calcar's patents, however, does not relieve Mr. Bagshaw from appearing for deposition.

27  ────────────────────
    [4] On July 17, 2008, Judge Andrew Guilford issued an Order rescheduling the trial date in this

28  matter to September 23, 2008. Suppl. Bleeker Decl., ¶ 6; Exh. K.

CHRISTIE, PARKER & HALE, LLP

III.    **THE SUBPOENA WAS PROPERLY ISSUED AND SERVED ON MR.**
**BAGSHAW.**

On May 27, 2008, at 6:15 p.m., Mr. Bagshaw was personally served at his home with a subpoena and witness fees. Bleeker Decl., ¶ 3; Exh. A. The process server, David Noriega, declared under penalty of perjury, that he served Mr. Bagshaw with the subpoena and a check for witness fees and provided counsel for Plaintiffs a copy of that check. *Id.* Mr. Bagshaw confirms that he was met by the process server at his home on May 27, 2008 and received papers from the process server, but claims that "the process server never tendered me any witness or mileage fees." Bagshaw Decl., ¶ 4. Based on Mr. Bagshaw's carefully drafted language elsewhere in his declaration, it is unclear what significance to place on Mr. Bagshaw's use of the word "tendered" and whether Mr. Bagshaw indeed admits he received the check (as verified by the process server) and is merely objecting based on an overly technical definition of "tendered." Regardless, Mr. Noriega did serve the witness fees on Mr. Bagshaw. If Mr. Bagshaw has since misplaced the check, Plaintiffs will gladly provide Mr. Bagshaw a replacement check prior to his deposition. Suppl. Bleeker Decl., ¶ 9.

This is not the first time that counsel for Mr. Bagshaw attempted to evade a properly served subpoena by "disputing" witness fees. Earlier in the litigation, another of Mr. Pistorino's clients, Daniel Kammen, refused to comply with a subpoena on similar grounds. In that instance, a different process server personally served a subpoena and witness fee check on an assistant for Mr. Kammen, who agreed to accept service on Mr. Kammen's behalf. Suppl. Bleeker Decl., Exh. R. The proof of service contained a minor typographical error, stating that service was completed at 3:49 a.m., when in fact it occurred at 3:49 p.m. The witness fee check was served in conjunction with the subpoena. Suppl. Bleeker Decl., ¶ 10. Mr. Kammen, however, refused to comply with the subpoena. Although Plaintiffs ultimately decided to depose other individuals instead of moving to compel the deposition of Mr. Kammen (Plaintiffs were limited to four additional depositions and thus needed to be selective), Plaintiffs certainly could have moved to compel enforcement of that subpoena, and in hindsight, maybe should have, given that Plaintiffs' decision not to move to compel apparently emboldened Mr.

CHRISTIE, PARKER & HALE, LLP

1    Pistorino to instruct additional clients to not comply with deposition subpoenas. *Id.* at ¶ 11.

2    **IV.    MR. BAGSHAW WAIVED ANY PROCEDURAL OBJECTIONS TO THE**

3    **SUBPOENA**

4          In his opposition, Mr. Bagshaw does not even address the legal authority cited in

5    Plaintiffs' moving papers, requiring him either to appear for the deposition or to file a motion to

6    quash the subpoena or for a protective order *prior* to the deposition date. *See Union Bank of*

7    *California 401(k) Plan v. Hansen (In re Coan)*, 2007 U.S. Dist. LEXIS 6288, at *6 (N.D. Cal.

8    Jan. 12, 2007) (finding "Subpoenaed Third Parties' failure to appear for the noticed depositions

9    is not excused merely by having served a written objection to the subpoenas"). Mr. Bagshaw

10   did neither and thus waived any objections. "A motion to quash or modify 'must be made

11   promptly,' allowing it to 'be heard *and granted before* the scheduled deposition.'" *Id.* at *5-*7

12   (citing to The Rutter Group, § 11:2288 (2006)). "A motion for protective order ordinarily

13   should be noticed at the earliest possible time and ***certainly before*** the discovery procedure is

14   set to occur." Rutter Group § 11:1162 (emphasis added). Mr. Bagshaw's silence on this issue is

15   tantamount to an admission that he has waived any objections.[5]

16   **V.    REQUIRING MR. BAGSHAW TO COMPLY WITH THE DEPOSITION**

17   **SUBPOENA IS NOT UNDULY BURDENSOME AND OPPRESSIVE**

18         Mr. Pistorino, counsel for Mr. Bagshaw, previously obstructed the deposition testimony

19   of deponent Mr. Gremban. Suppl. Bleeker Decl., ¶ 12.[6] Mr. Pistorino started the deposition by

20   objecting to the question "And is there any reason you can't give your best testimony today?" as

21   vague and ambiguous. *Id.* Mr. Pistorino objected to nearly every question on such grounds as

22

23   [5] In his opposition brief, Mr. Bagshaw improperly requests this Court to issue a protective order

24   "barring Plaintiffs from further seeking to depose Mr. Bagshaw." (Opp'n at 1:15-16). Mr.
     Bagshaw, however, has never filed any motion seeking a protective order.

25   [6] It is quite ironic that counsel for CalCars would complain about "laughing" during a
     deposition, given the actual improper conduct of CalCars' counsel during depositions. Bill

26   Rooklidge, counsel for CalCars, on several occasions has improperly coached a witness during
     a deposition and when asked to stop, made crude and personal attacks on the competency of

27   Plaintiffs' counsel. *See, e.g.,* 4/3/08 Kramer Depo. Tr. at 80:11-81:5 (attached as Exhibit S to
     Suppl. Bleeker Decl.); 6/25/08 Kramer Depo. Tr. at 369:8-371:3 (attached as Exhibit J to

28   Suppl. Bleeker Decl.).

the words "education" and "type" were vague and ambiguous. *Id.* Mr. Pistorino had obviously instructed Mr. Gremban that any time Mr. Pistorino objected to a term as "vague and ambiguous" that Mr. Gremban (a highly intelligent engineer) should pretend not to understand the question. *Id.* Mr. Pistorino also instructed Mr. Gremban not to answer several questions regarding a conversation Mr. Gremban had with his girlfriend about this litigation, on attorney-client privilege grounds, even though at the time of those conversations, neither Mr. Gremban nor his girlfriend were represented by counsel. *Id.* This obstructionist behavior by Mr. Pistorino went on throughout the deposition of Mr. Gremban. *Id.*

Mr. Bagshaw claims that it would be unduly burdensome and oppressive to be deposed given "Plaintiffs' conduct during the case generally." Opp'n at 5:12-13. This argument is baseless. Mr. Bagshaw points to one portion of Mr. Gremban's deposition, when Mr. Pistorino improperly objected to the word "type" as vague and ambiguous, Mr. Gremban claimed not to know was meant by the word "type," and Mr. Pistorino falsely accused counsel for Plaintiffs of "laughing" at the witness. The portion of the transcript cited by Mr. Bagshaw in his opposition accurately reflects that counsel for Plaintiffs did not laugh at Mr. Gremban. *See also* Bleeker Decl., ¶ 10.

Regardless, Mr. Pistorino's improper deposition tactics and a colloquy that occurred in a separate deposition have absolutely no bearing on whether it would be "unduly burdensome or oppressive" for Mr. Bagshaw to appear for his deposition.

## VI.    CONCLUSION

Calcar is entitled to take the deposition of CalCars' Senior Advisor in charge of commercializing CalCars. His personal knowledge is directly relevant to a host of issues in this

//

//

//

//

//

CHRISTIE, PARKER & HALE, LLP

1  trademark dispute, including the likelihood of confusion between Calcar and CalCars.  Calcar

2  respectfully requests this Court compel Mr. Bagshaw to appear for deposition.

3

4  DATED:  July 23, 2008                    Respectfully submitted,

5                                            CHRISTIE, PARKER & HALE, LLP

6

7  By  _____

8        G. Warren Bleeker

9  Attorneys for Plaintiffs,
   CALCAR, INC. and AMERICAN CALCAR,
   INC.

10

11  GWB PAS805079.1-*-07/23/08 2:36 PM

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28